**United States District Court**
For the Northern District of California

1
2
3
4
5                              UNITED STATES DISTRICT COURT
6                             NORTHERN DISTRICT OF CALIFORNIA
7
8    TK POWER, INC.,                                No. C-04-5098 EMC
9                  Plaintiff,
10          v.                                      **PRETRIAL CONFERENCE ORDER**
11   TEXTRON, INC.,
12                  Defendant.
13   _____/
14
15          A Pretrial Conference was held in this matter on April 26, 2006.  Pursuant to Federal Rule of
16   Civil Procedure 16(e), this order memorializes the rulings made and stipulations entered into.
17                       **I.      TRIAL DATE & LENGTH OF TRIAL**
18   A.     The trial shall begin on May 8, 2006, at 8:30 a.m.  (Counsel, however, should be present
19          before the Court at 8:00 a.m.)  Trial days shall be Monday through Friday, from 8:30 a.m. to
20          1:30 p.m., for a total of ten (10) court days, held in **Courtroom D**, 15th Floor, 450 Golden
21          Gate Avenue, San Francisco, CA  94102.
22   B.     Each side shall have up to twelve (12) hours to present its evidence in the liability and
23          compensatory damages phase of the trial.  This includes direct examination by one side of its
24          witnesses, cross-examination by that side of the opposing party's witnesses, and any rebuttal.
25          It does not include jury selection and instructions or opening statements and closing
26          arguments.  However, the Court may impose separate time limits on openings and closings.
27   C.     If necessary, a punitive damages phase will be held and submitted to the jury within one
28          court day.

**United States District Court**
For the Northern District of California

## II.   PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A.    No later than 2:30 p.m. of each trial day, counsel shall inform opposing counsel which exhibits, if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness.  If any such exhibits are still objected to, both counsel shall notify the Court after the jury is excused for the day and shall identify the exhibits at issue and the objections.  The Court will then schedule a conference that afternoon or the following morning at 8:00 a.m. to resolve the dispute.

B.    With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by May 5, 2006, at 12:00 p.m.  If any such exhibits are still objected to, both counsel shall notify the Court by May 5, 2006, at 3:00 p.m., and shall identify the exhibits at issue and the objections.  Counsel should notify the Court via fax at (415) 522-4200.  The Court will then address the dispute on the first day of trial, May 8, 2006, before any testimony begins.

C.    If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day.  The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

D.    Any demonstrative evidence shall be presented to opposing counsel the day before its use.  If an objection thereto cannot be resolved, the parties shall notify the Court by 3:00 p.m. of that day.

## III.   PROCEDURE FOR WITNESSES AT/DURING TRIAL

A.    Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness.  At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case.  No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal).  Alternatively, at the Court's discretion, any remaining time left until the end of that trial day shall be charged to the party causing the early adjournment.

United States District Court
For the Northern District of California

B.   Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order.  Counsel should give opposing counsel reasonable notice (at least one day) with respect to which witnesses will be testifying on a particular day.  Witnesses may be taken out of order if necessary.  Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

C.   Only one lawyer for each party may examine any single witness.  Only one lawyer per witness may make objections.

D.   If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the court reconvenes.  If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

E.   Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court.  The Court may read to the jury such undisputed facts at appropriate points in the trial.

F.   Counsel are instructed to have their witnesses review, prior to taking the stand, all exhibits the counsel intends to question the witness about during direct examination.

G.   Immediately before each new witness takes the stand, counsel calling the witness shall place on the witness stand a clearly marked copy of each exhibit that counsel expects to have the witness refer to during his or her direct examination.  Immediately before beginning cross-examination, counsel conducting cross-examination shall do the same with any additional exhibits to be referenced on cross.

H.   If counsel intends to have the witness draw diagrams or put markings on visual exhibits or diagrams prepared by the party calling the witness, the witness shall do so before taking the stand.  Once on the stand, the witness shall adopt the diagrams and/or markings and explain what they represent.  If the diagram or visual exhibit is prepared by the opposing party, the witness shall not make any markings on the diagram or visual exhibit without leave of the Court.

**United States District Court**
For the Northern District of California

1

### IV.   OTHER PROCEDURES AT/DURING TRIAL

2  A.   To make an objection, counsel shall rise, say "objection," and briefly state the legal ground

3      (*e.g.*, hearsay or irrelevant).  There shall be no speaking objections or argument from either

4      counsel unless requested by the Court.

5  B.   Bench conferences, or the equivalent of sidebars, will not be permitted absent truly

6      extenuating circumstances.  Disputes regarding exhibits shall be resolved as set forth in Part

7      II, *supra*.  Any other disputes or problems should be addressed either before the trial day

8      commences, at the end of the trial day, or during a recess, if necessary.

9

### V.   RULINGS ON PLAINTIFF'S MOTIONS IN LIMINE

10  A.   Plaintiff's Motion in Limine No. 1 - Excluding Reference to Any Entity Other than Textron

11      is DENIED.  Jury will be told E-Z-GO is a division of Textron.

12  B.   Plaintiff's Motion in Limine No. 2 - Judicial Admission of an Agreement is DENIED. The

13      stipulated facts provide substantial detail about the nature of the relationship.  Also, in

14      responding to the last five RFAs, Textron effectively concedes there was an agreement.

15  C.   Plaintiff's Motion in Limine No. 3 - Exclude Alleged Defects Not Previously Identified.  If

16      efficiency was claimed as a defect in Textron rebuttal expert disclosure reports, the motion is

17      DENIED.  If it was not and was brought up for the first time at the Bell deposition on March

18      31, 2006, the motion is GRANTED.

19  D.   Plaintiff's Motion in Limine No. 4 - Excluding Late Produced Documents is GRANTED.

20      However, documents which were duplicative of those produced earlier may be used at trial.

21      Otherwise, those produced for the first time shall not be used or relied upon by witnesses at

22      trial.

23  E.   Plaintiff's Motion in Limine No. 5 - Exclusion of Efficiency Results from Yang Tests is

24      GRANTED for the same reason as Plaintiff's Motion No. 4.

25  F.   Plaintiff's Motion in Limine No. 6 - Exclusion of Testing by Non-Experts is DENIED.  Tests

26      run by Gordon and Hearn in 2003 were done in conjunction with the development of the

27      chargers and in the context of the transaction that is the subject of this suit.  Presumably, the

28      parties were informed of the test results in the course of the subject transaction.  The test

1    results as reported by these witnesses also inform Textron's state of mind which is relevant

2    in the assessment of the breach of contract claim (given that TK alleges, *inter alia*, pretextual

3    excuse in terminating the contract).  Hence, their testimony about what they did and what

4    was reported, including any conclusions reached at that time, even if it includes opinion *e.g.*

5    about whether the charger met specifications, is of a percipient nature.  So long as these

6    witnesses do not offer opinions other than those reported to Textron or TK Power during the

7    time of the transaction, there is no *Daubert* issue.  A *Daubert* issue may arise if these

8    witnesses now attempt to provide an independent after-the-fact opinion for purposes of this

9    lawsuit.  The burden will be on Plaintiff to raise the issue should Textron attempt to elicit

10   such testimony.

11   G.   Plaintiff's Motion in Limine No. 7 - Exclusion of Expert Evidence for Lack of Foundation is

12        DENIED without prejudice.  To the extent Textron's experts relied upon TK's testing

13        information provided by Nguyen and Fleer, Plaintiff concedes there is a foundational basis

14        sufficient under *Daubert*.  As to these experts' reliance on Textron-conducted tests and

15        charge curves, Textron represents its witnesses on such testing (e.g. Gordon) will testify as to

16        the purpose, protocols, parameters, etc. sufficient to establish the necessary foundation.  If

17        Textron does so, *Daubert* will be satisfied as the basis of this motion focuses on the lack of

18        factual foundation for the expert opinions, not their qualifications or the science of their

19        methodologies.  This foundational issue will be resolved for trial.  The burden will be on

20        Plaintiff to renew the motion at trial if appropriate.

21                      **VI.   RULINGS ON DEFENDANT'S MOTIONS IN LIMINE**

22   A.   Defendants' Motion in Limine to Exclude Comparable Financial Position is unopposed and

23        is GRANTED.

24   B.   Defendants' Motion to Exclude Net Worth and Reference to Punitive Damages.  As noted

25        above in this Pretrial Order, the trial will be phased.  No evidence or mention of Textron's

26        net worth will be introduced at the liability/compensatory damages phase of the trial.

27        Punitive damages and net worth will not be reference nor evidence thereof admitted unless

28        and until there is a predicate finding by the jury warranting a second punitive damage phase.

In the first phase, however, evidence on the factual requisites for punitive damage liability may be introduced. At the end of the first phase, the jury will be given a special verdict form from which the Court will determine whether the predicate for punitive damages has been established. Neither party shall mention punitive damages during the first phase. Nor shall the jury be told their obligation to hear additional testimony and render a further verdict will turn on their findings in the first phase.

C.    Defendants' Motion to Exclude Lost Profits and Lost Business Value is GRANTED IN PART and DENIED IN PART. TK may introduce expert evidence on lost profits from this transaction. It may not introduce evidence and claim damages for lost business value. The Court GRANTS the motion as to TK's lost business value evidence but DENIES it as to lost profits.

    1.    Lost Profits

        a.    "[P]robable profits lost through breach of contract may be estimated, and an award of damages for loss of prospective profits will be sustained if there is a satisfactory basis for estimating the probable earnings that would have been received if the contract had been performed." *See also Mahoney v. Founders' Ins. Co.*, 190 Cal. App. 2d 430, 436 (Cal. App. 2d Dist., 1961), *disapproved on other grounds by Sumitomo Bank of Cal. v. Iwasaki*, 70 Cal.2d 81, 447 P.2d 956 (1968) (citation omitted). The appropriate measure of damages in a breach of contract action "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300.

        b.    Here, TK Power only seeks general, not special or consequential, damages and intends to offer evidence as to price, quantity, and costs. This evidence can establish lost profits from the alleged breach with reasonable certainty.

c.    TK Power's economic expert, Benoit, analyzes the incremental amount of profits TK Power would have made but for the breach:

Lost Profits =

Lost Revenues (lost units X price per unit) times

Incremental Profit Margin (residual profit after deducting incremental costs necessary to make and sell an additional unit).

This calculation required identifying costs and expenses incurred for incremental sale of lost units, based on historical variable costs: cost of goods, payroll expenses, additional staff to service the Textron Contract, consulting services, facility costs, insurance, travel, utilities, equipment/leases. *See Expert Report of Bryan Benoit,* ¶¶ 21, 26. These indicators are reasonably reliable to support a claim of general damages from breach of contract, or lost profits.

d.    Textron's reliance on *Resort Video v. Laser Video*, 35 Cal. App. 4th 1679, 1697 (2d Dist., 1995) is misplaced. There, the alleged lost profits were that of a prospective *buyer* and involved a series of assumption not supported by any substantial evidence such as historical data given the fact that plaintiff's business was unestablished. Here, the *seller* is simply seeking lost profits from a contract allegedly breached by the buyer. The claim merely seeks profits that would have been earned directly from that contract, not consequential lost opportunities that might have followed had the contract been performed.

2.    Loss of Business Value

a.    TK Power's expert has calculated loss of business value as the difference between the value of the entirety of TK's business prior to the breach and after the breach. Benoit Expert Report, ¶ 35. However, TK Power has not offered any authority to support an award of damages the diminution in the value of its business allegedly caused by a single business contract on which

income was lost.  What TK seeks, in effect, is to capitalize the lost profits on a single contract.  Under this analysis, every breach of contract or tort which diminishes a business's income would be capitalized (and thus multiplied many fold) into a damage element.  *See* Benoit Expert Rpt., ¶ 35.

b.      This is an entirely different situation than cases where the breach of contract entails the sale of an entire business or a tort action where a plaintiff is driven out of business.  In that instance, the loss of business is the direct result of the alleged wrongdoing.  Here, the alleged loss of business value is an indirect consequence and encompasses hypothetical events extending years into the future.  While the loss of business value may be appropriate in some circumstances, it is not here where what is alleged is a garden variety breach of contract or fraud on a single contract and the alleged loss of business value is so remote.

c.      Not only has TK failed to cite any legal precedent for its claim for lost business value in this context, the factual analysis by Benoit is replete with speculative assumptions.  As TK Power was establishing a new business venture in developing these battery charges, it has not presented sufficiently concrete or reasonably certain evidence to measure lost business value. Benoit relies on speculative projections for the value of TK Power's business, such as expectations to increase its market share and to acquire other businesses as a result of obtaining the contract with Textron.  Benoit Expert Rpt., ¶ 42.  Such expectations for a new business area (battery chargers) are extremely remote and speculative, and not reasonably reliable.

d.      In *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 883-884 (2d Dist. 2002), the Court of Appeal held that the "reasonable certainty" standard for proof of lost profits from an unestablished business applied in tort as well as contract cases.  There, the owner of a retail store brought a negligence action against the lessees of the upstairs office space who caused flooding in plaintiffs'

1    store, alleging that the flood prevented them from starting their internet

2    business.  In *Kids Universe*, the court noted that "When the operation of an

3    unestablished business is prevented, as here, prospective profits may be

4    shown in various ways" with reasonable certainty: "expert testimony,

5    economic and financial data, market surveys and analyses, business records of

6    similar enterprises, and the like."  95 Cal. App. 4th at 884.  Where the lost

7    profits calculation is based on speculative assumptions and unreasonable

8    comparisons, the evidence is insufficient to support a damages award.  *Id.* at

9    886 (citation omitted).

10           e.    Similarly, TK Power has not presented reliable non-speculative evidence what

11                 its overall business would have been worth with and without the Textron

12                 contract.

13           f.    Textron's motion in limine to exclude evidence of loss of business value is

14                 therefore GRANTED.  The motion to exclude evidence of lost profits is

15                 DENIED.

16   D.    Defendants' Motion to Exclude Fleer and His Tests.  For the same reasons stated in denying

17         Plaintiff's Motion in Limine No. 6, this motion is DENIED.  Fleer performed tests during the

18         subject transaction in 2003.  He is, in essence, a percipient witness so long as he testifies as

19         to what he did and what he reported to TK or Textron, even if his report includes opinions

20         and conclusions.  Moreover, to the extent there is a question about his knowledge of the

21         protocol, he testified that his limited knowledge pertained only to initial testing in May 2003,

22         and that he acquired necessary knowledge about testing procedures and protocol shortly

23         thereafter.  He has sufficient experience and expertise to testify about his testing procedures.

24         Moreover, there is no evidence that any material data was lost in the transfer process.

25         Finally, since he did not rely on any attorney-client communications as the basis of his

26         opinions, there is no waiver resulting from his providing what might be deemed expert

27         testimony.  *People v. Milner*, 45 Cal.3d 227, 241 (1988).  The motion is DENIED.

28

**United States District Court**
For the Northern District of California

E.       Defendants' Motion to Exclude Certain Opinions of Gibbons is GRANTED.  Mr. Gibbons may not opine about the desirability of this litigation of the likely business/financial result that could or would have ensued.  He may, however, testify about the likelihood that the software problems would have been solved and  the probability of successful development of the charger by TK and Textron.

## VII.       RULINGS ON TEXTRON'S OBJECTIONS TO TK POWER'S EXPERTS

A.       <u>Benoit</u>

The Court, in this Pretrial Order, has ruled on the admissibility of expert evidence on Plaintiff's damages.  Objection SUSTAINED IN PART and OVERRULED IN PART.

B.       <u>Gibbons, Keenan, and Fleer</u>

Textron does not object to their qualifications but to testimony about recent testing occurring during the week of April 10, 2006.  TK explained that this was testing of the charger returned from Textron after Textron tested it.  TK claims it was returned broken and testing was part of an effort to fix it and determine how it was damaged.  As the Court ruled at the Pretrial Conference, either Gibbons or Keenan (but not both) will be permitted to testify about the new testing but shall be subject to a deposition not exceeding 2 hours in length before trial.  Moreover, since Gary Fleer was involved in the testing and his activities may be relied upon by either Gibbons or Keenan in their testimony about the new testing, Fleer will also be subject to a deposition not to exceed one hour.  Objections OVERRULED.

C.       <u>Karczewski and Stojanovic</u>

These witnesses may testify even though no expert report was served because they will give testimony as percipient witnesses.   They performed testing during this transaction in 2003.  Textron conceded at the hearing that if these witnesses testified about what they did and whether they believed the charges conformed to specifications, Textron does not object.  As noted in regard to the Court's ruling on Plaintiff's Motion in Limine No. 6, so long as their testimony is about what they did and saw, and about conclusions conveyed to TK or Textron at the time, they will be treated as percipient witnesses, even if what they reported in 2003 included conclusions and opinions.  Objections OVERRULED.

D.      Taylor

The same applies to Taylor's testimony.  Objection OVERRULED.

**VIII.    RULING RE TK POWER'S MOTION RE SUFFICIENCY OF TEXTRON'S
RESPONSES TO RFAS**

The responses are sufficient.  Textron's denials sets up possible sanctions under Rule 36
should the denials prove wrongful.  The Court will instruct the jury that narratives contained
in a response to a RFA shall be treated the same and admitted as an interrogatory response.

**IX.    RULING RE TRIAL DEPOSITION OF STACEY GORDON**

This trial deposition will be held on May 3, 2006.  Counsel for both Textron and TK Power
shall appear by telephone.  The video shall not be edited, and its entirety will be played for
the jury at trial.

**X.    MEET AND CONFER**

The parties shall meet and confer in good faith to pare down the exhibit lists (including
deposition excerpts and written discovery) and objections thereto.  They shall also meet and
confer to reach greater agreement on jury instructions.  Revisions to the exhibit lists and
objections and proposed jury instructions shall be filed with the Court by 3:00 p.m., Monday,
May 1, 2006.  Two (2) courtesy copies shall be delivered to chambers by 3:00 p.m., Monday,
May 1, 2006.

**XI.    STIPULATED FACTS**

The parties agreed that the seventy (70) undisputed facts set forth in the joint pretrial
statement shall be deemed stipulated facts which the Court will read to the jury.

///
///
///
///
///
///
///

**United States District Court**
For the Northern District of California

1

## XII.   VOIR DIRE

After Voir Dire by the bench, each party will be given twenty (20) minutes to voir dire prospective jurors.

## XIII.   FURTHER PRETRIAL CONFERENCE

A Further Pretrial Conference shall be held at 2:00 p.m. on May 3, 2006 in **Courtroom C**, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.

IT IS SO ORDERED.

Dated: April 28, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California