**United States District Court**
For the Northern District of California

1

2

3

4

5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8    TK POWER, INC.,                          No. C-04-5098 EMC

9              Plaintiff,

10        v.

11   TEXTRON, INC.,                           **JURY INSTRUCTIONS**

12             Defendant.

13   _____/

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 1**

**DUTY OF JURY**

LADIES AND GENTLEMEN:  YOU NOW ARE THE JURY IN THIS CASE, AND I WANT TO TAKE A FEW MINUTES TO TELL YOU SOMETHING ABOUT YOUR DUTIES AS JURORS AND TO GIVE YOU SOME INSTRUCTIONS.  AT THE END OF THE TRIAL, I WILL GIVE YOU MORE DETAILED INSTRUCTIONS.  THOSE INSTRUCTIONS WILL CONTROL YOUR DELIBERATIONS.

YOU SHOULD NOT TAKE ANYTHING I MAY SAY OR DO DURING THE TRIAL AS INDICATING WHAT I THIN OF THE EVIDENCE OR WHAT YOUR VERDICT SHOULD BE.

**United States District Court**

For the Northern District of California

**United States District Court**
For the Northern District of California

1

**JURY INSTRUCTION NO. 2**

2

**CLAIMS AND DEFENSES**

3

4   TO HELP YOU FOLLOW THE EVIDENCE, I WILL GIVE YOU A BRIEF SUMMARY

5   OF THE POSITIONS OF THE PARTIES:

6

7   THE  PLAINTIFF TK POWER CLAIMS THAT IT IS ENTITLED TO MONETARY

8   PAYMENT FROM TEXTRON/E-Z-GO FOR AT LEAST TWO REASONS.

9

10   TK POWER CLAIMS THAT IT AND TEXTRON/E-Z-GO ENTERED INTO A

11   CONTRACT FOR TK POWER TO DEVELOP AN ON-BOARD BATTERY CHARGER AND

12   THEN FOR TEXTRON/E-Z-GO TO PURCHASE 75,000 BATTERY CHARGERS FOR 3-5

13   YEARS AFTER DEVELOPMENT OF THE ON-BOARD BATTERY CHARGER BY TK

14   POWER.

15

16   TK POWER CLAIMS THAT TEXTRON/E-Z-GO BREACHED THIS CONTRACT BY

17   REPUDIATING THE CONTRACT DURING THE COURSE OF DEVELOPMENT.

18

19   TK POWER ALSO CLAIMS THAT TEXTRON/E-Z-GO 'S BREACH OF THIS

20   CONTRACT CAUSED HARM TO TK POWER FOR WHICH TEXTRON/E-Z-GO SHOULD

21   PAY.

22

23   TK POWER ALSO CLAIMS THAT TEXTRON/E-Z-GO COMMITTED A FRAUD

24   WHEN IT TOLD TK POWER THAT IT WAS PLANNING ON PURCHASING 75,000

25   CHARGERS PER YEAR FROM TK POWER.

26

27

28

United States District Court

For the Northern District of California

1    TK POWER CLAIMS THAT IT IS ENTITLED TO THE EXPENSES IT INCURRED IN

2    RELIANCE ON TEXTRON/E-Z-GO'S FRAUDULENT STATEMENT AND OTHER DAMAGES.

3

4    TEXTRON/E-Z-GO DENIES THESE ALLEGATIONS AND CLAIMS THAT ITS

5    CONTRACT WITH TK WAS CANCELED DUE TO TK'S OWN BREACH OF THE

6    AGREEMENT BY FAILURE TO TIMELY TENDER DELIVERY OF FIVE WORKING

7    PROTOTYPES AS REQUIRED BY THE CONTRACT.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JURY INSTRUCTION NO. 3**

2

**WHAT IS EVIDENCE**

3

4      THE EVIDENCE YOU ARE TO CONSIDER IN DECIDING WHAT THE FACTS ARE

5   CONSISTS OF:

6

7      (1)     THE SWORN TESTIMONY OF ANY WITNESS;

8      (2)     THE EXHIBITS WHICH ARE RECEIVED INTO EVIDENCE; AND

9      (3)     ANY FACTS TO WHICH ALL THE LAWYERS STIPULATE.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 4**

**WHAT IS NOT EVIDENCE**

THE FOLLOWING THINGS ARE NOT EVIDENCE, AND YOU MUST NOT CONSIDER THEM AS EVIDENCE IN DECIDING THE FACTS OF THIS CASE:

(1)     STATEMENTS AND ARGUMENTS OF THE ATTORNEYS;

(2)     QUESTIONS AND OBJECTIONS OF THE ATTORNEYS;

(3)     TESTIMONY THAT I INSTRUCT YOU TO DISREGARD; AND

(4)     ANYTHING YOU MAY SEE OR HEAR WHEN THE COURT IS NOT IN SESSION EVEN IF WHAT YOU SEE OR HEAR IS DONE OR SAID BY ONE OF THE PARTIES OR BY ONE OF THE WITNESSES.

**JURY INSTRUCTION NO. 5**

**EVIDENCE FOR LIMITED PURPOSE**

SOME EVIDENCE MAY BE ADMITTED FOR A LIMITED PURPOSE ONLY.  WHEN I INSTRUCT YOU THAT AN ITEM OF EVIDENCE HAS BEEN ADMITTED FOR A LIMITED PURPOSE, YOU MUST CONSIDER IT ONLY FOR THAT LIMITED PURPOSE AND FOR NO OTHER.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 6**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

EVIDENCE MAY BE DIRECT OR CIRCUMSTANTIAL.  DIRECT EVIDENCE IS DIRECT PROOF OF A FACT, SUCH AS TESTIMONY BY A WITNESS ABOUT WHAT THAT WITNESS PERSONALLY SAW OR HEARD OR DID.  CIRCUMSTANTIAL EVIDENCE IS PROOF OF ONE OR MORE FACTS FROM WHICH YOU COULD FIND ANOTHER FACT.  YOU SHOULD CONSIDER BOTH KINDS OF EVIDENCE.  THE LAW MAKES NO DISTINCTION BETWEEN THE WEIGHT TO BE GIVEN TO EITHER DIRECT OR CIRCUMSTANTIAL EVIDENCE.  IT IS FOR YOU TO DECIDE HOW MUCH WEIGHT TO GIVE TO ANY EVIDENCE.

**JURY INSTRUCTION NO. 7**

**RULING ON OBJECTIONS**

THERE ARE RULES OF EVIDENCE THAT CONTROL WHAT CAN BE RECEIVED INTO EVIDENCE. WHEN A LAWYER ASKS A QUESTION OR OFFERS AN EXHIBIT INTO EVIDENCE AND A LAWYER ON THE OTHER SIDE THINKS THAT IT IS NOT PERMITTED BY THE RULES OF EVIDENCE, THAT LAWYER MAY OBJECT. IF I OVERRULE THE OBJECTION, THE QUESTION MAY BE ANSWERED OR THE EXHIBIT RECEIVED. IF I SUSTAIN THE OBJECTION, THE QUESTION CANNOT BE ANSWERED, AND THE EXHIBIT CANNOT BE RECEIVED. WHENEVER I SUSTAIN AN OBJECTION TO A QUESTION, YOU MUST IGNORE THE QUESTION AND MUST NOT GUESS WHAT THE ANSWER MIGHT HAVE BEEN.

SOMETIMES I MAY ORDER THAT EVIDENCE BE STRICKEN FROM THE RECORD AND THAT YOU DISREGARD OR IGNORE THE EVIDENCE. THAT MEANS THAT WHEN YOU ARE DECIDING THE CASE, YOU MUST NOT CONSIDER THE EVIDENCE THAT I TOLD YOU TO DISREGARD.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 8**

**CREDIBILITY OF WITNESSES**

IN DECIDING THE FACTS IN THIS CASE, YOU MAY HAVE TO DECIDE WHICH TESTIMONY TO BELIEVE AND WHICH TESTIMONY NOT TO BELIEVE.  YOU MAY BELIEVE EVERYTHING A WITNESS SAYS, OR PART OF IT, OR NONE OF IT.

IN CONSIDERING THE TESTIMONY OF ANY WITNESS, YOU MAY TAKE INTO ACCOUNT:

(1)    THE OPPORTUNITY AND ABILITY OF THE WITNESS TO SEE OR HEAR OR KNOW THE THINGS TESTIFIED TO;

(2)    THE WITNESS'S MEMORY;

(3)    THE WITNESS'S MANNER WHILE TESTIFYING;

(4)    THE WITNESS'S INTEREST IN THE OUTCOME OF THE CASE AND ANY BIAS OR PREJUDICE;

(5)    WHETHER OTHER EVIDENCE CONTRADICTED THE WITNESS'S TESTIMONY;

(6)    THE REASONABLENESS OF THE WITNESS'S TESTIMONY IN LIGHT OF ALL THE EVIDENCE; AND

(7)    ANY OTHER FACTORS THAT BEAR ON BELIEVABILITY.

THE WEIGHT OF THE EVIDENCE AS TO A FACT DOES NOT NECESSARILY DEPEND ON THE NUMBER OF WITNESSES WHO TESTIFY.

**JURY INSTRUCTION NO. 9**

**CONDUCT OF THE JURY**

I WILL NOW SAY A FEW WORDS ABOUT YOUR CONDUCT AS JURORS.

FIRST, YOU ARE NOT TO DISCUSS THIS CASE WITH ANYONE, INCLUDING YOUR FELLOW JURORS, MEMBERS OF YOUR FAMILY, PEOPLE INVOLVED IN THE TRIAL, OR ANYONE ELSE, NOR ARE YOU ALLOWED TO PERMIT OTHERS TO DISCUSS THE CASE WITH YOU.  IF ANYONE APPROACHES YOU AND TRIES TO TALK TO YOU ABOUT THE CASE, PLEASE LET ME KNOW ABOUT IT IMMEDIATELY;

SECOND, DO NOT READ ANY NEWS STORIES OR ARTICLES OR LISTEN TO ANY RADIO OR TELEVISION REPORTS ABOUT THE CASE OR ABOUT ANYONE WHO HAS ANYTHING TO DO WITH IT;

THIRD, DO NOT DO ANY RESEARCH, SUCH AS CONSULTING DICTIONARIES, SEARCHING THE INTERNET OR USING OTHER REFERENCE MATERIALS, AND DO NOT MAKE ANY INVESTIGATION ABOUT THE CASE ON YOUR OWN;

FOURTH, IF YOU NEED TO COMMUNICATE WITH ME SIMPLY GIVE A SIGNED NOTE TO THE COURTROOM DEPUTY CLERK TO GIVE TO ME; AND

FIFTH, DO NOT MAKE UP YOUR MIND ABOUT WHAT TH VERDICT SHOULD BE UNTIL AFTER YOU HAVE GONE TO THE JURY ROOM TO DECIDE THE CASE AND YOU AND YOUR FELLOW JURORS HAVE DISCUSSED THE EVIDENCE.  KEEP AN OPEN MIND UNTIL THEN.

**JURY INSTRUCTION NO. 10**

**NO TRANSCRIPT AVAILABLE TO JURY**

AT THE END OF THE TRIAL YOU WILL HAVE TO MAKE YOUR DECISION BASED ON WHAT YOU RECALL OF THE EVIDENCE.  YOU WILL NOT HAVE A TRANSCRIPT OF THE TRIAL.  I URGE YOU TO PAY CLOSE ATTENTION TO THE TESTIMONY AS IT IS GIVEN.

**JURY INSTRUCTION NO. 11**

**TAKING NOTES**


IF YOU WISH, YOU MAY TAKE NOTES TO HELP YOU REMEMBER WHAT WITNESSES SAID.  IF YOU DO TAKE NOTES, PLEASE KEEP THEM TO YOURSELF UNTIL YOU AND YOUR FELLOW JURORS GO TO THE JURY ROOM TO DECIDE THE CASE.  DO NOT LET NOTE-TAKING DISTRACT YOU SO THAT YOU DO NOT HEAR OTHER ANSWERS BY WITNESSES.  WHEN YOU LEAVE, YOUR NOTES SHOULD BE LEFT IN THE ENVELOPE IN THE JURY ROOM.


WHETHER OR NOT YOU TAKE NOTES, YOU SHOULD RELY ON YOUR OWN MEMORY OF WHAT WAS SAID.  NOTES ARE ONLY TO ASSIST YOUR MEMORY.  YOU SHOULD NOT BE OVERLY INFLUENCED BY THE NOTES.

**JURY INSTRUCTION NO. 12**

**OUTLINE OF TRIAL**

THE NEXT PHASE OF THE TRIAL WILL NOW BEGIN.  FIRST, EACH SIDE MAY MAKE AN OPENING STATEMENT.  AN OPENING STATEMENT IS NOT EVIDENCE.  IT IS SIMPLY AN OUTLINE TO HELP YOU UNDERSTAND WHAT THAT PARTY EXPECTS THE EVIDENCE WILL SHOW.  A PARTY IS NOT REQUIRED TO MAKE AN OPENING STATEMENT.

TK POWER WILL THEN PRESENT EVIDENCE, AND COUNSEL FOR THE TEXTRON/E-Z-GO MAY CROSS-EXAMINE.  THEN TEXTRON/E-Z-GO MAY PRESENT EVIDENCE, AND COUNSEL FOR TK POWER MAY CROSS-EXAMINE.

AFTER THE EVIDENCE HAS BEEN PRESENTED, I WILL INSTRUCT YOU ON THE LAW THAT APPLIES TO THE CASE AND THE ATTORNEYS WILL MAKE CLOSING ARGUMENTS.

AFTER THAT, YOU WILL GO TO THE JURY ROOM TO DELIBERATE ON YOUR VERDICT.

**JURY INSTRUCTION NO. 13**

**BURDEN OF PROOF - PREPONDERANCE OF THE EVIDENCE**

WHEN A PARTY HAS THE BURDEN OF PROOF ON ANY CLAIM OR AFFIRMATIVE DEFENSE BY A PREPONDERANCE OF THE EVIDENCE, IT MEANS YOU MUST BE PERSUADED BY THE EVIDENCE THAT THE CLAIM OR AFFIRMATIVE DEFENSE IS MORE PROBABLY TRUE THAN NOT TRUE.

YOU SHOULD BASE YOUR DECISION ON ALL OF THE EVIDENCE, REGARDLESS OF WHICH PARTY PRESENTED IT.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 14**

**BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE**


　　　WHEN A PARTY HAS THE BURDEN OF PROVING ANY CLAIM OR DEFENSE BY CLEAR AND CONVINCING EVIDENCE, IT MEANS YOU MUST BE PERSUADED BY THE EVIDENCE THAT THE CLAIM OR DEFENSE IS HIGHLY PROBABLE.  SUCH EVIDENCE REQUIRES A HIGHER STANDARD OF PROOF THAN PROOF BY A PREPONDERANCE OF THE EVIDENCE.


　　　YOU SHOULD BASE YOUR DECISION ON ALL OF THE EVIDENCE, REGARDLESS OF WHICH PARTY PRESENTED IT.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 15**

**QUESTIONS TO WITNESSES BY JURORS**

WHILE IT IS NOT CUSTOMARY FOR A JUROR TO ASK A QUESTION OF A WITNESS, IF YOU WISH TO DO SO, PUT THE QUESTION IN WRITING AND HAND IT TO THE COURTROOM DEPUTY.

THE COURT AND COUNSEL WILL REVIEW YOUR QUESTION.  DO NOT BE CONCERNED IF THE QUESTION IS NOT ASKED.

DO NOT DISCUSS YOUR QUESTION WITH ANYONE, INCLUDING THE COURTROOM DEPUTY. REMEMBER THAT YOU ARE NOT TO DISCUSS THE CASE WITH OTHER JURORS UNTIL IT IS SUBMITTED FOR YOUR DECISION.

**JURY INSTRUCTION NO. 16**

**CAUTIONARY INSTRUCTION—FIRST RECESS**

WE ARE ABOUT TO TAKE OUR FIRST BREAK DURING THE TRIAL, AND I WANT TO REMIND YOU OF THE INSTRUCTION I GAVE YOU EARLIER. UNTIL THE TRIAL IS OVER, YOU ARE NOT TO DISCUSS THIS CASE WITH ANYONE, INCLUDING YOUR FELLOW JURORS, MEMBERS OF YOUR FAMILY, PEOPLE INVOLVED IN THE TRIAL, OR ANYONE ELSE, NOR ARE YOU ALLOWED TO PERMIT OTHERS TO DISCUSS THE CASE WITH YOU. IF ANYONE APPROACHES YOU AND TRIES TO TALK TO YOU ABOUT THE CASE, PLEASE LET ME KNOW ABOUT IT IMMEDIATELY. DO NOT READ OR LISTEN TO ANY NEWS REPORTS OF THE TRIAL. FINALLY, YOU ARE REMINDED TO KEEP AN OPEN MIND UNTIL ALL THE EVIDENCE HAS BEEN RECEIVED AND YOU HAVE HEARD THE ARGUMENTS OF COUNSEL, THE INSTRUCTIONS OF THE COURT, AND THE VIEWS OF YOUR FELLOW JURORS.

IF YOU NEED TO SPEAK WITH ME ABOUT ANYTHING, SIMPLY GIVE A SIGNED NOTE TO THE COURTROOM DEPUTY TO GIVE TO ME.

I WILL NOT REPEAT THESE ADMONITIONS EACH TIME WE RECESS OR ADJOURN, BUT YOU WILL BE REMINDED OF THEM ON SUCH OCCASIONS.

**JURY INSTRUCTION NO. 17**

**BENCH CONFERENCES AND RECESSES**

FROM TIME TO TIME DURING THE TRIAL, IT MAY BECOME NECESSARY FOR ME TO TALK WITH THE ATTORNEYS OUT OF THE HEARING OF THE JURY, EITHER BY HAVING A CONFERENCE AT THE BENCH WHEN THE JURY IS PRESENT IN THE COURTROOM, OR BY CALLING A RECESS. PLEASE UNDERSTAND THAT WHILE YOU ARE WAITING, WE ARE WORKING. THE PURPOSE OF THESE CONFERENCES IS NOT TO KEEP RELEVANT INFORMATION FROM YOU, BUT TO DECIDE HOW CERTAIN EVIDENCE IS TO BE TREATED UNDER THE RULES OF EVIDENCE AND TO AVOID CONFUSION AND ERROR.

WE WILL, OF COURSE, DO WHAT WE CAN TO KEEP THE NUMBER AND LENGTH OF THESE CONFERENCES TO A MINIMUM. I MAY NOT ALWAYS GRANT AN ATTORNEY'S REQUEST FOR A CONFERENCE. DO NOT CONSIDER MY GRANTING OR DENYING A REQUEST FOR A CONFERENCE AS ANY INDICATION OF MY OPINION OF THE CASE OR OF WHAT YOUR VERDICT SHOULD BE.

**JURY INSTRUCTION NO. 18**

**STIPULATIONS OF FACT**


THE PARTIES HAVE AGREED TO CERTAIN FACTS THAT HAVE BEEN STATED TO YOU.  YOU SHOULD THEREFORE TREAT THESE FACTS AS HAVING BEEN PROVED.


1.   E-Z-GO IS A DIVISION OF TEXTRON. TEXTRON IS THE NAMED DEFENDANT IN THIS CASE.  PLAINTIFF DEALT EXCLUSIVELY WITH E-Z-GO IN THE CONTEXT OF THE AGREEMENT AT ISSUE.

2.   TK IS A NEVADA CORPORATION WITH ITS PRINCIPAL PLACE OF BUSINESS IN FREMONT, CALIFORNIA IN ALAMEDA COUNTY.

3.   SINCE 2002, GENE TENCZAR HAS BEEN THE PRESIDENT AND CHIEF EXECUTIVE OFFICER OF TK.

4.   SINCE 2002, GARY FLEER HAS BEEN THE VICE PRESIDENT OF OPERATIONS OF TK.

5.   JACEK KARCZEWSKI IS AN OUTSIDE CONTRACTOR HIRED TO WORK ON DEVELOPMENT OF THE CHARGER.  MR. KARCZEWSKI WORKED PRIMARILY ON DESIGN OF ELECTRO-MECHANICAL ASPECTS OF THE BATTERY CHARGER.

6.   VLADO STOJANOVIC IS ANOTHER OUTSIDE CONTRACTOR HIRED BY ROBERT TAYLOR TO WORK ON DEVELOPMENT OF THE CHARGER. TAYLOR USED STOJANOVIC TO DEVELOP SOFTWARE FOR THE BATTERY CHARGER.

7.   TEXTRON'S E-Z-GO DIVISION MANUFACTURES GOLF CARS AND UTILITY VEHICLES.  TEXTRON'S E-Z-GO DIVISION IS LOCATED IN AUGUSTA, GEORGIA.

8.   IN OR ABOUT MID-2001, DEFENDANT BEGAN EXPLORING THE DEVELOPMENT AND OUTSOURCED MANUFACTURE OF A HIGH

**United States District Court**

For the Northern District of California

FREQUENCY ON-BOARD SOLID-STATE CHARGER FOR USE IN GOLF AND TURF VEHICLES.

9. IN OR ABOUT MID-2001, DEFENDANT'S BUYER, JASON HYLAND, CONTACTED ROBERT TAYLOR, WHO WAS AT THE TIME REPRESENTING TK'S PREDECESSOR, TURN KEY SOLUTIONS, AND PROVIDED A LIST OF ITEMS THAT DEFENDANT WANTED TO SEE IN WHAT IT CALLED "THE NEW GENERATION CHARGER."

10. IN OR ABOUT MID-2001, DEFENDANT WROTE TO ROBERT TAYLOR AND INVITED HIM TO SUBMIT A QUOTE FOR A PRODUCTION OF APPROXIMATELY 78,000 CHARGERS.

11. IN AUGUST 2001, GENE TENCZAR, ROBERT TAYLOR AND ANOTHER TK REPRESENTATIVE VISITED DEFENDANT'S FACILITY IN AUGUSTA, GEORGIA TO DISCUSS TK'S CAPABILITIES, TECHNOLOGIES, AND THE POSSIBILITY OF A PARTNERSHIP UNDER WHICH TK WOULD DESIGN, DEVELOP, AND PRODUCE BATTERY CHARGERS FOR DEFENDANT.

12. AS A PREREQUISITE TO ITS SELECTION OF A COMPANY TO DEVELOP A PROTOTYPE HIGH-FREQUENCY ON-BOARD BATTERY CHARGER FOR IT, DEFENDANT REQUIRED ANY SUCH COMPANY TO SUBMIT TO IT A QUOTE WITH PRICING BASED ON EXPECTED MANUFACTURE OF APPROXIMATELY 75,000 SUCH UNITS EACH YEAR.

13. AS OF ITS RETENTION BY TEXTRON TO DEVELOP PROTOTYPE ON-BOARD BATTERY CHARGERS FOR DEFENDANT, TK HAD MADE KNOWN ITS INTENTION TO ENTER INTO AN AGREEMENT WITH DEFENDANT IN THE FUTURE FOR ITS SALE OF APPROXIMATELY 75,000 CHARGERS TO DEFENDANT ON AN ANNUAL BASIS.

14. ON OR ABOUT MARCH 28, 2002, DEFENDANT IDENTIFIED TURNKEY SOLUTIONS, INC., TK'S AFFILIATE, AS ONE OF SEVERAL POTENTIAL

SUPPLIERS TO QUOTE ON THE COST FOR SELLING A CHARGER, BASED ON AN EAU OF APPROXIMATELY 75,000 CHARGERS.

15. ON APRIL 11, 2002, IN RESPONSE TO DEFENDANT'S REQUEST, TK PROVIDED TO DEFENDANT A BUDGETARY QUOTATION, BY WHICH IT OFFERED TO SELL DEFENDANT CHARGERS AT $119.70 APIECE, BASED ON AN EAU OF 75,000 UNITS.

16. ON APRIL 11, 2002, TK ADVISED DEFENDANT NON-RECURRING ENGINEERING FEES WOULD BE APPROXIMATELY $25,000 FOR DEVELOPMENT OF 5 PROTOTYPES CHARGERS AND STATED A TARGET DELIVERY DATE FOR CHARGERS WAS 6 MONTHS AFTER RECEIVING A PURCHASE ORDER FROM DEFENDANT.

17. ON JULY 22, 2002, STACEY GORDON OF DEFENDANT TEXTRON RESPONDED TO TK'S ROBERT TAYLOR BY OUTLINING A "SCHEDULE FOR CHARGER DEVELOPMENT AND PRODUCTION."

18. ON JULY 23, 2003, ROBERT TAYLOR SENT STACEY GORDON AN EMAIL IN WHICH HE THANKED DEFENDANT FOR SELECTING TK AS ITS "DEVELOPMENT PARTNER."

19. ON JULY 26, 2002, STACEY GORDON OF DEFENDANT RESPONDED BY LETTER WHICH STATED THAT DEFENDANT HAD "SELECTED TK POWER, INC. TO DEVELOP THE NEXT GENERATION E-Z-GO CHARGER."

20. ON JULY 26, 2002, STACEY GORDON OF DEFENDANT ADVISED ROBERT TAYLOR OF TK THAT DEFENDANT HAD SET A JANUARY 2004 PRODUCTION DATE AND ADVISED ROBERT TAYLOR THAT DEFENDANT STILL INTENDED TO MEET THIS DEADLINE AND THAT HE WANTED TO "DISCUSS THE TIMELINE . . . IN MORE DETAIL" LATER.

21. IN DECIDING TO ENTER INTO AN AGREEMENT WITH TK, DEFENDANT RELIED IN PART ON TK'S QUOTE OF "$119.70 BASED ON AN EAU OF 75,000 UNITS."

22.     DEFENDANT REQUESTED THAT TK NOT MARKET THE CHARGER TK
        WAS DEVELOPING TO ANY OF ITS COMPETITORS OR SELL THE
        ON-BOARD CHARGER TO ANYONE ELSE WHILE TK WAS ATTEMPTING
        TO MANUFACTURE IT FOR DEFENDANT.

23.     TK REQUESTED A PURCHASE ORDER FROM DEFENDANT, AND
        DEFENDANT PROVIDED ONE ON OCTOBER 15, 2002.

24.     ON OCTOBER 15, 2002, DEFENDANT SUBMITTED A PURCHASE ORDER TO
        TK FOR FIVE CHARGERS THAT MET ITS SPECIFICATIONS.  DEFENDANT
        AGREED TO PAY $67,500.00.

25.     THE OCTOBER 15, 2002 PURCHASE ORDER THAT DEFENDANT
        SUBMITTED TO TK WAS FOR DELIVERY OF SOFTWARE TO BE USED IN
        THE ON-BOARD CHARGERS, FIVE PREPRODUCTION CHARGERS, AND
        FIVE HEAT SINKS AND TOOLING.

26.     THE OCTOBER 15, 2002 PURCHASE ORDER THAT DEFENDANT
        SUBMITTED TO TK PROVIDED THAT TK WOULD DEVELOP THE
        SOFTWARE TO BE USED IN FIVE PREPRODUCTION, OR PROTOTYPE
        CHARGERS, ALONG WITH "HEAT SINKS" IN WHICH THE CHARGER
        HARDWARE WOULD SIT, AND "TOOLING" NECESSARY FOR THE
        MANUFACTURE OF THE PROTOTYPES.

27.     DEFENDANT TENDERED PAYMENT TO TK AGAINST THE OCTOBER 15,
        2002 PURCHASE ORDER FOR ON-BOARD HIGH FREQUENCY CHARGER
        PROTOTYPES ON DECEMBER 3, 2002.  PURSUANT TO AGREEMENT OF
        THE PARTIES, DEFENDANT PAID ONE HALF OF THE PURCHASE ORDER
        AMOUNT.  TK ACCEPTED THE PAYMENT.

28.     ON JULY 22, 2002, STACEY GORDON SENT A LETTER TO ROBERT
        TAYLOR THAT DISCUSSED DEFENDANT'S DESIRE FOR A "LOW COST
        SOLUTION" "TO MEASURE AMP-HOURS REMOVED FROM AND
        RETURNED TO THE BATTERIES."

United States District Court

For the Northern District of California

29.     DEFENDANT MADE A DECISION THAT AN INTERNAL SHUNT WAS NOT DESIRABLE IN LIGHT OF ITS COST, AND INSTEAD UTILIZED AN EXTERNAL SHUNT THAT WAS ORIGINALLY PROPOSED BY TK.

30.     DEFENDANT WAS RESPONSIBLE FOR WRITING THE ALGORITHM FOR THE ON-BOARD CHARGER.

31.     TK AND DEFENDANT AGREED THAT TK WOULD WRITE THE SOFTWARE IN ACCORDANCE WITH THE ALGORITHM, AND THAT DEFENDANT WOULD ALSO OWN THE SOFTWARE.

32.     BOURKE SUGGESTED CHANGES IN THE HARDWARE TK INCORPORATED INTO THE ON-BOARD CHARGER TO IMPROVE SAFETY AND RESOLUTION.

33.     IN AUGUST 2003, DEFENDANT REQUESTED TK TO ALTER THE HARDWARE FOR USE IN THE ON-BOARD CHARGER.

34.     DEFENDANT NEVER DELIVERED TO TK ANY DOCUMENT ENTITLED "FUNCTIONAL SPECIFICATION," WHICH DOCUMENT INCLUDED A REQUIREMENT THAT THE CHARGER THAT TK DEVELOP FOR DEFENDANT DETECT A CHANGE IN VOLTAGE THAT IS LOWER THAN 72 MV.

35.     DURING THE CHARGER DEVELOPMENT, DEFENDANT MADE CHANGES TO THE WRITTEN VERSION OF ITS ORIGINAL SPECIFICATIONS FOR AN ON-BOARD CHARGER AS CONVEYED TO TK.

36.     EVERY DOCUMENT INCLUDING THE WORDS "FUNCTIONAL SPECIFICATIONS" IN ITS TITLE AND DELIVERED BY DEFENDANT TO TK AFTER MAY 2002 INCLUDED THE WORD "DRAFT" IN THE DOCUMENT.

37.     THE FINAL, MASS PRODUCED VERSION OF THE CHARGER WOULD HAVE REQUIRED AN EXTERNAL AC POWER LINE, WHICH IS NECESSARY TO POWER AN ON-BOARD CHARGER.

United States District Court
For the Northern District of California

38.   DEFENDANT WAS RESPONSIBLE FOR PROCURING AN AC CABLE FOR USE WITH THE MASS PRODUCED VERSION OF THE ON-BOARD CHARGER.

39.   DEFENDANT NEVER ENTERED INTO AN AGREEMENT WITH TK FOR TK TO DESIGN ANY EXTERNAL AC CONNECTOR AND CABLE FOR POWER TO AN ON-BOARD HIGH FREQUENCY BATTERY CHARGER THAT TK WAS DEVELOPING FOR DEFENDANT.

40.   AS OF 2004, AN ON-BOARD HIGH FREQUENCY BATTERY CHARGER (SUCH AS THE ONE TK WAS DEVELOPING) REQUIRED AN EXTERNAL FILTER IN ORDER TO OPERATE IN COMPLIANCE WITH FEDERAL COMMUNICATIONS COMMISSION REGULATIONS PERTAINING TO EMITTED NOISE.

41.   AS OF AUGUST 31, 2003, DEFENDANT HAD NOT COMPLETED DEVELOPMENT OF AN EXTERNAL AC POWER CORD FOR USE WITH AN ON-BOARD HIGH FREQUENCY CHARGER THAT TK POWER, INC. WAS DEVELOPING FOR DEFENDANT.

42.   DEFENDANT HAD DECIDED THAT IT WOULD PURCHASE THE AC CABLE FROM A CHINESE COMPANY NAMED PANTENE.

43.   DEFENDANT NEVER DELIVERED A TOOLING PURCHASE ORDER TO PANTENE OR ANY OTHER PERSON FOR THE AC CABLE DESIGN IN AN ON-BOARD HIGH FREQUENCY CHARGER.

44.   DEFENDANT WOULD NOT HAVE BEEN ABLE TO PUT AN ON-BOARD CHARGER DEVELOPED BY TK INTO GOLF CARS FOR USE BY CUSTOMERS UNLESS MOUNTING ACCOMMODATIONS WERE INSTALLED IN THE GOLF CAR.

45.   DEFENDANT HAS NEVER MANUFACTURED A GOLF CAR WITH MOUNTING ACCOMMODATIONS DESIGNED TO ACCEPT ANY ON-BOARD CHARGER THAT TK MADE EFFORTS TO DEVELOP FOR DEFENDANT.

46.   DEFENDANT WOULD HAVE PROVIDED NECESSARY MOUNTING ACCOMMODATIONS TO USE THE ON-BOARD CHARGER, BUT ANY SUCH ACCOMMODATIONS WOULD NOT HAVE REQUIRED A REDESIGN OF THE GOLF CAR TO ACCEPT THE CHARGER.

47.   DEFENDANT DID NOT ENTER INTO AN AGREEMENT WITH TK OR ANY OTHER PERSON FOR IT TO PROVIDE MOUNTING ACCOMMODATIONS FOR ANY ON-BOARD BATTERY CHARGER.

48.   DEFENDANT DID NOT ENTER INTO AN AGREEMENT WITH TK FOR IT TO PROVIDE A RE-TOOLED SIDE PANEL AND DASH PANEL TO ACCEPT A LED STATUS MONITORING LIGHT FOR ANY ON-BOARD HIGH FREQUENCY BATTERY CHARGER.

49.   DEFENDANT COULD NOT MASS-PRODUCE GOLF CARS INCORPORATING THE ON-BOARD HIGH FREQUENCY CHARGER THAT TK POWER WAS DEVELOPING FOR IT WITHOUT A NEWLY DESIGNED AC CABLE RECEPTACLE.

50.   GREG SCHLACHTER SENT TO GENE TENCZAR AND ROBERT TAYLOR AN EMAIL ON OR ABOUT MARCH 18, 2003, IN WHICH EMAIL, SCHLACHTER STATED THAT HE WANTED TO "REVIEW [DEFENDANT'S] FINAL COST" OF THE ON-BOARD CHARGER FOR PRODUCTION, AND HE ASKED THAT THE COST COME IN THE $110.00 - $112.00 RANGE."

51.   GREG SCHLACHTER SENT TO GENE TENCZAR AND ROBERT TAYLOR AN EMAIL ON OR ABOUT MARCH 18, 2003, IN WHICH HE ASKED FOR YEAR-OVER-YEAR COST REDUCTIONS IN THE RANGE OF 5% PER YEAR.

52.   IN MID TO LATE 2003, DEFENDANT REVIEWED ALL ASPECTS OF THE ON-BOARD CHARGER PROJECT.

53.   IN MID TO LATE 2003, DEFENDANT ANALYZED THE COST-EFFICIENCY OF THE ON-BOARD CHARGER PROJECT.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

54. AS OF ITS SELECTION OF TK TO DEVELOP THE ON-BOARD CHARGER, DEFENDANT WAS AWARE THAT THERE WERE SAFETY ISSUES ASSOCIATED WITH AN ON-BOARD HIGH FREQUENCY CHARGER APPLICATION.

55. DEFENDANT IDENTIFIED A SAFETY ISSUE ASSOCIATED WITH THE AC CABLE.

56. A DFMEA IS A "DESIGN FAILURE MODES EFFECTS ANALYSIS," OR A PROCESS DESIGNED TO IDENTIFY POTENTIAL OPERATIONAL AND/OR SAFETY ISSUES ASSOCIATED WITH A MANUFACTURED PRODUCT.

57. WHEN DEFENDANT DECIDED TO TERMINATE THE ON-BOARD CHARGER PROJECT, IT WAS AWARE OF SAFETY CONCERNS WITH USAGE OF AN ON-BOARD CHARGER IDENTIFIED IN PART BY A DFMEA.

58. DEFENDANT MADE THE DECISION TO TERMINATE THE DEVELOPMENT OF AN ON-BOARD CHARGER BASED IN PART ON SAFETY CONCERNS.

59. MARKETING RESEARCH PERFORMED IN LATE 2003 WAS ONE OF SEVERAL FACTORS THAT LED DEFENDANT TO ITS DECISION TO STOP THE ON-BOARD CHARGER PROJECT.

60. COST WAS A CONSIDERATION, AMONG MANY CONSIDERATIONS, AFFECTING DEFENDANT'S CHOICES REGARDING BATTERY CHARGING SYSTEMS, INCLUDING THE DECISION TO TERMINATE THE ON-BOARD BATTERY CHARGER.

61. DEFENDANT STUDIED MARKET PRICES FOR HIGH FREQUENCY CHARGERS GENERALLY AND THE MARKET PRICE FOR HIGH FREQUENCY CHARGERS GENERALLY DROPPED BETWEEN THE TIME THAT DEFENDANT RETAINED TK TO DEVELOP A HIGH FREQUENCY CHARGER FOR IT AND JANUARY 2004.

**United States District Court**
For the Northern District of California

62. DEFENDANT HAS NEVER INCLUDED AN ON-BOARD CHARGER IN ANY OF ITS GOLF CARS THAT WERE MANUFACTURED FOR PUBLIC CONSUMPTION.

63. IN AN EMAIL DATED OCTOBER 29, 2003, ROBERT TAYLOR TOLD HEARN THAT TK HAD BEEN "CONDUCTING A TREMENDOUS AMOUNT OF TESTING" AND THAT THE "[TEST] RESULTS LOOK REASONABLY GOOD."

64. IN AN EMAIL DATED OCTOBER 29, 2003, ROBERT TAYLOR TOLD CARLTON HEARN THAT TK WAS "ORGANIZING [ITS] TEST AND VALIDATION WITH THE MANUFACTURER AND WE WOULD LIKE TO DO A COMPLETE DESIGN SPECIFICATION REVIEW IN THE NEAR FUTURE ONCE YOU HAVE EXAMINED THE UNIT WE HAVE HERE."

65. IN THE FALL OF 2003, TK TOLD DEFENDANT THAT TK HAD AN ON-BOARD CHARGER THAT FUNCTIONED PER THE REQUIRED SPECIFICATIONS.

66. ROGER YANG WAS EMPLOYED BY DEFENDANT IN FEBRUARY 2004.

67. DEFENDANT REQUESTED THAT ROGER YANG CONDUCT SOME TESTS ON A PROTOTYPE ON-BOARD CHARGER IT RECEIVED FROM TK.

68. ROGER YANG CONCLUDED THAT THE RELIABILITY OF THE ON-BOARD CHARGER DEFENDANT RECEIVED FROM TK WAS VERIFIABLE FOR SEVEN CYCLES.

69. ROGER YANG DETERMINED THAT THE ON-BOARD CHARGER DEFENDANT RECEIVED FROM TK WORKED WELL OVER SEVEN CYCLES, MEANING THAT IT FUNCTIONED TO RECHARGE SIX THIRTY-SIX VOLT GOLF CAR BATTERIES.

70. AS OF OCTOBER 2005, DEFENDANT HAD NOT PRODUCED A GOLF CAR IT CALLED A "NEXT GENERATION GOLF CAR" FOR PUBLIC USE.

**JURY INSTRUCTION NO. 19**

**DEPOSITION AS SUBSTANTIVE EVIDENCE**

WHEN A PERSON IS UNAVAILABLE TO TESTIFY AT TRIAL, THE DEPOSITION OF THAT PERSON MAY BE USED AT THE TRIAL. A DEPOSITION IS THE SWORN TESTIMONY OF A WITNESS TAKEN BEFORE TRIAL. THE WITNESS IS PLACED UNDER OATH TO TELL THE TRUTH AND LAWYERS FOR EACH PARTY MAY ASK QUESTIONS. THE QUESTIONS AND ANSWERS ARE RECORDED.

DEPOSITION TESTIMONY IS ENTITLED TO THE SAME CONSIDERATION AND IS TO BE JUDGED, INSOFAR AS POSSIBLE, IN THE SAME WAY AS IF THE WITNESS HAD BEEN PRESENT TO TESTIFY.

DO NOT PLACE ANY SIGNIFICANCE ON THE BEHAVIOR OR TONE OF VOICE OF ANY PERSON READING THE QUESTIONS OR ANSWERS.

**JURY INSTRUCTION NO. 20**

**ADMITTED MATTER IS CONCLUSIVELY ESTABLISHED**

ANY MATTER ADMITTED IN RESPONSE TO A REQUEST FOR ADMISSION IS CONCLUSIVELY ESTABLISHED.

**JURY INSTRUCTION NO. 21**

**USE OF RESPONSES TO INTERROGATORIES OR NARRATIVE RESPONSES TO**

**REQUESTS FOR ADMISSIONS OF A PARTY**

EVIDENCE IS NOW TO BE PRESENTED TO YOU IN THE FORM OF ANSWERS OF ONE OF THE PARTIES TO WRITTEN INTERROGATORIES OR REQUESTS FOR ADMISSIONS SUBMITTED BY THE OTHER SIDE. THESE  ANSWERS TO INTERROGATORIES AND NARRATIVE RESPONSES TO REQUESTS FOR ADMISSIONS HAVE BEEN GIVEN IN WRITING AND UNDER OATH, BEFORE THE ACTUAL TRIAL, IN RESPONSE TO QUESTIONS WHICH WERE SUBMITTED IN WRITING UNDER ESTABLISHED COURT PROCEDURES. THE ANSWERS AND RESPONSES ARE ENTITLED TO THE SAME CONSIDERATION AND ARE TO BE JUDGED AS TO CREDIBILITY AND WEIGHT, AND OTHERWISE CONSIDERED BY YOU INSOFAR AS POSSIBLE, AS IF THE ANSWERS WERE MADE FROM THE WITNESS STAND.

**JURY INSTRUCTION NO. 22**

**DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW**

MEMBERS OF THE JURY, NOW THAT YOU HAVE HEARD ALL THE EVIDENCE AND THE ARGUMENTS OF THE ATTORNEYS, IT IS MY DUTY TO INSTRUCT YOU ON THE LAW WHICH APPLIES TO THIS CASE. A COPY OF THESE INSTRUCTIONS WILL BE AVAILABLE IN THE JURY ROOM FOR YOU TO CONSULT IF YOU FIND IT NECESSARY.

IT IS YOUR DUTY TO FIND THE FACTS FROM ALL THE EVIDENCE IN THE CASE. TO THOSE FACTS YOU WILL APPLY THE LAW AS I GIVE IT TO YOU. YOU MUST FOLLOW THE LAW AS I GIVE IT TO YOU WHETHER YOU AGREE WITH IT OR NOT. YOU MUST NOT BE INFLUENCED BY ANY PERSONAL LIKES OR DISLIKES, OPINIONS, PREJUDICES, OR SYMPATHY. THAT MEANS THAT YOU MUST DECIDE THE CASE SOLELY ON THE EVIDENCE BEFORE YOU. YOU WILL RECALL THAT YOU TOOK AN OATH PROMISING TO DO SO AT THE BEGINNING OF THE CASE.

IN FOLLOWING MY INSTRUCTIONS, YOU MUST FOLLOW ALL OF THEM AND NOT SINGLE OUT SOME AND IGNORE OTHERS; THEY ARE ALL EQUALLY IMPORTANT. YOU MUST NOT READ INTO THESE INSTRUCTIONS OR INTO ANYTHING THE COURT MAY HAVE SAID OR DONE ANY SUGGESTION AS TO WHAT VERDICT YOU SHOULD RETURN—THAT IS A MATTER ENTIRELY UP TO YOU.

**JURY INSTRUCTION NO. 23**

**WHAT IS EVIDENCE**


THE EVIDENCE FROM WHICH YOU ARE TO DECIDE WHAT THE FACTS ARE CONSISTS OF:


(1) THE SWORN TESTIMONY OF ANY WITNESS;

(2) THE EXHIBITS WHICH HAVE BEEN RECEIVED INTO EVIDENCE; AND

(3) ANY FACTS TO WHICH THE LAWYERS HAVE AGREED OR STIPULATED.

**JURY INSTRUCTION NO. 24**

**WHAT IS NOT EVIDENCE**

IN REACHING YOUR VERDICT, YOU MAY CONSIDER ONLY THE TESTIMONY AND EXHIBITS RECEIVED INTO EVIDENCE. CERTAIN THINGS ARE NOT EVIDENCE, AND YOU MAY NOT CONSIDER THEM IN DECIDING WHAT THE FACTS ARE. I WILL LIST THEM FOR YOU:

(1)     ARGUMENTS AND STATEMENTS BY LAWYERS ARE NOT EVIDENCE. THE LAWYERS ARE NOT WITNESSES. WHAT THEY HAVE SAID IN THEIR OPENING STATEMENTS, WILL SAY IN THEIR CLOSING ARGUMENTS, AND AT OTHER TIMES IS INTENDED TO HELP YOU INTERPRET THE EVIDENCE, BUT IT IS NOT EVIDENCE. IF THE FACTS AS YOU REMEMBER THEM DIFFER FROM THE WAY THE LAWYERS HAVE STATED THEM, YOUR MEMORY OF THEM CONTROLS.

(2)     QUESTIONS AND OBJECTIONS BY LAWYERS ARE NOT EVIDENCE. ATTORNEYS HAVE A DUTY TO THEIR CLIENTS TO OBJECT WHEN THEY BELIEVE A QUESTION IS IMPROPER UNDER THE RULES OF EVIDENCE. YOU SHOULD NOT BE INFLUENCED BY THE OBJECTION OR BY THE COURT'S RULING ON IT.

(3)     TESTIMONY THAT HAS BEEN EXCLUDED OR STRICKEN, OR THAT YOU HAVE BEEN INSTRUCTED TO DISREGARD, IS NOT EVIDENCE AND MUST NOT BE CONSIDERED. IN ADDITION SOME TESTIMONY AND EXHIBITS HAVE BEEN RECEIVED ONLY FOR A LIMITED PURPOSE; WHERE I HAVE GIVEN A LIMITING INSTRUCTION, YOU MUST FOLLOW IT.

United States District Court

For the Northern District of California

1   (4)   ANYTHING YOU MAY HAVE SEEN OR HEARD WHEN THE COURT WAS

2         NOT IN SESSION IS NOT EVIDENCE. YOU ARE TO DECIDE THE CASE

3         SOLELY ON THE EVIDENCE RECEIVED AT THE TRIAL.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 25**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

EVIDENCE MAY BE DIRECT OR CIRCUMSTANTIAL. DIRECT EVIDENCE IS DIRECT PROOF OF A FACT, SUCH AS TESTIMONY OF AN EYEWITNESS. CIRCUMSTANTIAL EVIDENCE IS INDIRECT EVIDENCE, THAT IS, PROOF OF A CHAIN OF FACTS FROM WHICH YOU COULD FIND THAT ANOTHER FACT EXISTS. YOU ARE TO CONSIDER BOTH KINDS OF EVIDENCE. THE LAW PERMITS YOU TO GIVE EQUAL WEIGHT TO BOTH, BUT IT IS FOR YOU TO DECIDE HOW MUCH WEIGHT TO GIVE TO ANY EVIDENCE.  BY WAY OF EXAMPLE, IF YOU WAKE UP IN THE MORNING AND SEE THAT THE SIDEWALK IS WET, YOU MAY FIND FROM THAT FACT THAT IT RAINED DURING THE NIGHT.  HOWEVER, OTHER EVIDENCE, SUCH AS A TURNED ON GARDEN HOSE, MAY EXPLAIN THE WATER ON THE SIDEWALK.  THEREFORE, BEFORE YOU DECIDE THAT A FACT HAS BEEN PROVED BY CIRCUMSTANTIAL EVIDENCE, YOU MUST CONSIDER ALL THE EVIDENCE IN THE LIGHT OF REASON, EXPERIENCE, AND COMMON SENSE.

**JURY INSTRUCTION NO. 26**

**CREDIBILITY OF WITNESSES**

IN DECIDING THE FACTS IN THIS CASE, YOU MAY HAVE TO DECIDE WHICH TESTIMONY TO BELIEVE AND WHICH TESTIMONY NOT TO BELIEVE. YOU MAY BELIEVE EVERYTHING A WITNESS SAYS, OR PART OF IT, OR NONE OF IT.

IN CONSIDERING THE TESTIMONY OF ANY WITNESS, YOU MAY TAKE INTO ACCOUNT:

(1)   THE OPPORTUNITY AND ABILITY OF THE WITNESS TO SEE OR HEAR OR KNOW THE THINGS TESTIFIED TO;

(2)   THE WITNESS' MEMORY;

(3)   THE WITNESS' MANNER WHILE TESTIFYING;

(4)   THE WITNESS' INTEREST IN THE OUTCOME OF THE CASE AND ANY BIAS OR PREJUDICE;

(5)   WHETHER OTHER EVIDENCE CONTRADICTED THE WITNESS' TESTIMONY;

(6)   THE REASONABLENESS OF THE WITNESS' TESTIMONY IN LIGHT OF ALL THE EVIDENCE; AND

(7)   ANY OTHER FACTORS THAT BEAR ON BELIEVABILITY.

THE WEIGHT OF THE EVIDENCE AS TO A FACT DOES NOT NECESSARILY DEPEND ON THE NUMBER OF WITNESSES WHO TESTIFY.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 27**

**OPINION EVIDENCE, EXPERT WITNESSES**

YOU HAVE HEARD TESTIMONY FROM PERSONS WHO, BECAUSE OF EDUCATION OR EXPERIENCE, ARE PERMITTED TO STATE OPINIONS AND THE REASONS FOR THOSE OPINIONS.

OPINION TESTIMONY SHOULD BE JUDGED JUST LIKE ANY OTHER TESTIMONY. YOU MAY ACCEPT IT OR REJECT IT, AND GIVE IT AS MUCH WEIGHT AS YOU THINK IT DESERVES, CONSIDERING THE WITNESS' EDUCATION AND EXPERIENCE, THE REASONS GIVEN FOR THE OPINION, AND ALL THE OTHER EVIDENCE IN THE CASE.

**JURY INSTRUCTION NO. 28**

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

CERTAIN CHARTS AND SUMMARIES THAT HAVE NOT BEEN RECEIVED IN EVIDENCE HAVE BEEN SHOWN TO YOU IN ORDER TO HELP EXPLAIN THE CONTENTS OF BOOKS, RECORDS, DOCUMENTS, OR OTHER EVIDENCE IN THE CASE. THEY ARE NOT THEMSELVES EVIDENCE OR PROOF OF ANY FACTS. IF THEY DO NOT CORRECTLY REFLECT THE FACTS OR FIGURES SHOWN BY THE EVIDENCE IN THE CASE, YOU SHOULD DISREGARD THESE CHARTS AND SUMMARIES AND DETERMINE THE FACTS FROM THE UNDERLYING EVIDENCE.

**JURY INSTRUCTION NO. 29**

**CHARTS AND SUMMARIES IN EVIDENCE**


CERTAIN CHARTS AND SUMMARIES HAVE BEEN RECEIVED INTO EVIDENCE
TO ILLUSTRATE INFORMATION BROUGHT OUT IN THE TRIAL. CHARTS AND
SUMMARIES ARE ONLY AS GOOD AS THE UNDERLYING EVIDENCE THAT SUPPORTS
THEM. YOU SHOULD, THEREFORE, GIVE THEM ONLY SUCH WEIGHT AS YOU THINK
THE UNDERLYING EVIDENCE DESERVES.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 30**

**DUTY TO DELIBERATE**


WHEN YOU BEGIN YOUR DELIBERATIONS, YOU SHOULD ELECT ONE MEMBER OF THE JURY AS YOUR PRESIDING JUROR. THAT PERSON WILL PRESIDE OVER THE DELIBERATIONS AND SPEAK FOR YOU HERE IN COURT.


YOU WILL THEN DISCUSS THE CASE WITH YOUR FELLOW JURORS TO REACH AGREEMENT IF YOU CAN DO SO. YOUR VERDICT MUST BE UNANIMOUS.


EACH OF YOU MUST DECIDE THE CASE FOR YOURSELF, BUT YOU SHOULD DO SO ONLY AFTER YOU HAVE CONSIDERED ALL OF THE EVIDENCE, DISCUSSED IT FULLY WITH THE OTHER JURORS, AND LISTENED TO THE VIEWS OF YOUR FELLOW JURORS.


DO NOT BE AFRAID TO CHANGE YOUR OPINION IF THE DISCUSSION PERSUADES YOU THAT YOU SHOULD. DO NOT COME TO A DECISION SIMPLY BECAUSE OTHER JURORS THINK IT IS RIGHT.


IT IS IMPORTANT THAT YOU ATTEMPT TO REACH A UNANIMOUS VERDICT BUT, OF COURSE, ONLY IF EACH OF YOU CAN DO SO AFTER HAVING MADE YOUR OWN CONSCIENTIOUS DECISION. DO NOT CHANGE AN HONEST BELIEF ABOUT THE WEIGHT AND EFFECT OF THE EVIDENCE SIMPLY TO REACH A VERDICT.

**JURY INSTRUCTION NO. 31**

**USE OF NOTES**

SOME OF YOU HAVE TAKEN NOTES DURING THE TRIAL. WHETHER OR NOT YOU TOOK NOTES, YOU SHOULD RELY ON YOUR OWN MEMORY OF WHAT WAS SAID. NOTES ARE ONLY TO ASSIST YOUR MEMORY. YOU SHOULD NOT BE OVERLY INFLUENCED BY THE NOTES.

**JURY INSTRUCTION NO. 32**

**COMMUNICATION WITH COURT**

IF IT BECOMES NECESSARY DURING YOUR DELIBERATIONS TO COMMUNICATE WITH ME, YOU MAY SEND A NOTE THROUGH THE COURTROOM DEPUTY, SIGNED BY YOUR PRESIDING JUROR OR BY ONE OR MORE MEMBERS OF THE JURY. NO MEMBER OF THE JURY SHOULD EVER ATTEMPT TO COMMUNICATE WITH ME EXCEPT BY A SIGNED WRITING; AND I WILL COMMUNICATE WITH ANY MEMBER OF THE JURY ON ANYTHING CONCERNING THE CASE ONLY IN WRITING, OR HERE IN OPEN COURT. IF YOU SEND OUT A QUESTION, I WILL CONSULT WITH THE PARTIES BEFORE ANSWERING IT, WHICH MAY TAKE SOME TIME. YOU MAY CONTINUE YOUR DELIBERATIONS WHILE WAITING FOR THE ANSWER TO ANY QUESTION. REMEMBER THAT YOU ARE NOT TO TELL ANYONE -- INCLUDING ME -- HOW THE JURY STANDS, NUMERICALLY OR OTHERWISE, UNTIL AFTER YOU HAVE REACHED A UNANIMOUS VERDICT OR HAVE BEEN DISCHARGED. DO NOT DISCLOSE ANY VOTE COUNT IN ANY NOTE TO THE COURT.

United States District Court
For the Northern District of California

**JURY INSTRUCTION NO. 33**

**RETURN OF VERDICT**


        A VERDICT FORM HAS BEEN PREPARED FOR YOU.  AFTER YOU HAVE

REACHED UNANIMOUS AGREEMENT ON A VERDICT, YOUR PRESIDING JUROR WILL

FILL IN THE FORM THAT HAS BEEN GIVEN TO YOU, SIGN AND DATE IT, AND ADVISE

THE COURT THAT YOU ARE READY TO RETURN TO THE COURTROOM.

**JURY INSTRUCTION NO. 34**

**ESSENTIAL FACTUAL ELEMENTS**

TK POWER CLAIMS THAT IT AND TEXTRON/E-Z-GO ENTERED INTO A CONTRACT FOR TK POWER TO DEVELOP AN ON-BOARD BATTERY CHARGER AND THEN FOR TEXTRON/E-Z-GO TO PURCHASE 75,000 BATTERY CHARGERS FOR 3-5 YEARS AFTER DEVELOPMENT OF THE ON-BOARD BATTERY CHARGER BY TK POWER.

TK POWER CLAIMS THAT TEXTRON/E-Z-GO BREACHED THIS CONTRACT BY REPUDIATING THE CONTRACT DURING THE COURSE OF DEVELOPMENT.

TK POWER ALSO CLAIMS THAT TEXTRON/E-Z-GO 'S BREACH OF THIS CONTRACT CAUSED HARM TO TK POWER FOR WHICH TEXTRON/E-Z-GO SHOULD PAY.

TEXTRON/E-Z-GO DENIES THESE ALLEGATIONS AND CLAIMS THAT ITS CONTRACT WITH TK WAS CANCELED DUE TO TK'S OWN BREACH OF THE AGREEMENT BY FAILURE TO TIMELY TENDER DELIVERY OF FIVE WORKING PROTOTYPES AS REQUIRED BY THE CONTRACT.

**JURY INSTRUCTION NO. 35**

**CONTRACT FORMATION -- ESSENTIAL FACTUAL ELEMENTS**

TK POWER CLAIMS THAT THE PARTIES ENTERED INTO A CONTRACT. TO PROVE THAT A CONTRACT WAS CREATED, TK POWER MUST PROVE ALL OF THE FOLLOWING:

1.      THAT THE CONTRACT TERMS WERE CLEAR ENOUGH THAT THE PARTIES COULD UNDERSTAND WHAT EACH WAS REQUIRED TO DO;

2.      THAT THE PARTIES AGREED TO GIVE EACH OTHER SOMETHING OF VALUE. A PROMISE TO DO SOMETHING OR NOT TO DO SOMETHING MAY HAVE VALUE; AND

3.      THAT THE PARTIES AGREED TO THE TERMS OF THE CONTRACT.

WHEN YOU EXAMINE WHETHER THE PARTIES AGREED TO THE TERMS OF THE CONTRACT, ASK YOURSELF IF, UNDER THE CIRCUMSTANCES, A REASONABLE PERSON WOULD CONCLUDE, FROM THE WORDS AND CONDUCT OF EACH PARTY, THAT THERE WAS AN AGREEMENT. YOU MAY NOT CONSIDER THE PARTIES' HIDDEN INTENTIONS.

IF TK POWER DID NOT PROVE ALL OF THE ABOVE, THEN A CONTRACT WAS NOT CREATED.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 36**

**BREACH OF CONTRACT -- ESSENTIAL FACTUAL ELEMENTS**

TO RECOVER DAMAGES FROM TEXTRON/E-Z-GO FOR BREACH OF CONTRACT, TK POWER MUST PROVE ALL OF THE FOLLOWING:

1.  THAT TK POWER AND TEXTRON/E-Z-GO ENTERED INTO A CONTRACT;

2.  THAT TK POWER DID ALL, OR SUBSTANTIALLY ALL OF THE SIGNIFICANT THINGS THAT THE CONTRACT REQUIRED IT TO DO OR THAT IT WAS EXCUSED FROM HAVING TO DO THOSE THINGS;

3.  THAT ALL CONDITIONS REQUIRED FOR TEXTRON/E-Z-GO 'S PERFORMANCE HAD OCCURRED;

4.  THAT TEXTRON/E-Z-GO FAILED TO DO SOMETHING THAT THE CONTRACT REQUIRED IT TO DO; AND

5.  THAT TK POWER WAS HARMED BY THAT FAILURE.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 37**

**ORAL OR WRITTEN CONTRACT TERMS**

CONTRACTS MAY BE WRITTEN OR ORAL.

CONTRACTS MAY BE PARTLY WRITTEN AND PARTLY ORAL.

ORAL CONTRACTS ARE JUST AS VALID AS WRITTEN CONTRACTS.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 38**

**IMPLIED-IN-FACT CONTRACT**

IN DECIDING WHETHER A CONTRACT WAS CREATED, YOU SHOULD CONSIDER THE CONDUCT AND RELATIONSHIP OF THE PARTIES AS WELL AS ALL THE CIRCUMSTANCES OF THE CASE.

CONTRACTS CAN BE CREATED BY THE CONDUCT OF THE PARTIES, WITHOUT SPOKEN OR WRITTEN WORDS. CONTRACTS CREATED BY CONDUCT ARE JUST AS VALID AS CONTRACTS FORMED WITH WORDS.

CONDUCT WILL CREATE A CONTRACT IF THE CONDUCT OF BOTH PARTIES IS INTENTIONAL AND EACH KNOWS, OR HAS REASON TO KNOW, THAT THE OTHER PARTY WILL INTERPRET THE CONDUCT AS AN AGREEMENT TO ENTER INTO A CONTRACT.

**JURY INSTRUCTION NO. 39**

**FORMATION OF CONTRACTS FOR THE SALE OF GOODS**


A CONTRACT FOR THE SALE OF GOODS MAY BE MADE IN ANY MANNER SUFFICIENT TO SHOW AN AGREEMENT BETWEEN THE PARTIES, INCLUDING CONDUCT BY BOTH PARTIES THAT RECOGNIZES THE EXISTENCE OF SUCH AN AGREEMENT.

**JURY INSTRUCTION NO. 40**

**SUBSTANTIAL PERFORMANCE**


TEXTRON/E-Z-GO CONTENDS THAT TK POWER DID NOT PERFORM ALL OF THE THINGS THAT IT WAS REQUIRED TO DO UNDER THE CONTRACT, AND THEREFORE TEXTRON/E-Z-GO DID NOT HAVE TO PERFORM ITS OBLIGATIONS UNDER THE CONTRACT. TO OVERCOME THIS CONTENTION, TK POWER MUST PROVE BOTH OF THE FOLLOWING:


1.    THAT TK POWER MADE A GOOD FAITH EFFORT TO COMPLY WITH THE CONTRACT; AND

2.    THAT TEXTRON/E-Z-GO RECEIVED ESSENTIALLY WHAT THE CONTRACT CALLED FOR BECAUSE TK POWER 'S FAILURES, IF ANY, WERE SO TRIVIAL OR UNIMPORTANT THAT THEY COULD HAVE BEEN EASILY FIXED OR PAID FOR.

**JURY INSTRUCTION NO. 41**

**MODIFICATION**

TK POWER CLAIMS THAT THE ORIGINAL CONTRACT WAS MODIFIED, OR CHANGED. TK POWER MUST PROVE THAT THE PARTIES AGREED TO THE MODIFICATION. TEXTRON/E-Z-GO DENIES THAT THE CONTRACT WAS MODIFIED.

THE PARTIES TO A CONTRACT MAY AGREE TO MODIFY ITS TERMS. YOU MUST DECIDE WHETHER A REASONABLE PERSON WOULD CONCLUDE FROM THE WORDS AND CONDUCT OF TK POWER AND TEXTRON/E-Z-GO THAT THEY AGREED TO MODIFY THE CONTRACT. YOU CANNOT CONSIDER THE PARTIES' HIDDEN INTENTIONS.

A CONTRACT IN WRITING MAY BE MODIFIED BY A CONTRACT IN WRITING.

A CONTRACT IN WRITING MAY BE MODIFIED BY AN ORAL AGREEMENT TO THE EXTENT THE ORAL AGREEMENT IS CARRIED OUT BY THE PARTIES.

A CONTRACT IN WRITING MAY BE MODIFIED BY AN ORAL AGREEMENT IF THE PARTIES AGREE TO GIVE EACH OTHER SOMETHING OF VALUE.

AN ORAL CONTRACT MAY BE MODIFIED BY CONSENT OF THE PARTIES, IN WRITING, WITHOUT AN AGREEMENT TO GIVE EACH OTHER SOMETHING OF VALUE.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 42**

**INTERPRETATION -- MEANING OF ORDINARY WORDS**

YOU SHOULD ASSUME THAT THE PARTIES INTENDED THE WORDS IN THEIR CONTRACT TO HAVE THEIR USUAL AND ORDINARY MEANING UNLESS YOU DECIDE THAT THE PARTIES INTENDED THE WORDS TO HAVE A SPECIAL MEANING.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 43**

**INTERPRETATION -- MEANING OF TECHNICAL WORDS**

YOU SHOULD ASSUME THAT THE PARTIES INTENDED TECHNICAL WORDS USED IN THE CONTRACT TO HAVE THE MEANING THAT IS USUALLY GIVEN TO THEM BY PEOPLE WHO WORK IN THAT TECHNICAL FIELD, UNLESS YOU DECIDE THAT THE PARTIES CLEARLY USED THE WORDS IN A DIFFERENT SENSE.

**JURY INSTRUCTION NO. 44**

**INTERPRETATION -- CONSTRUCTION OF CONTRACT AS A WHOLE**


　　　IN DECIDING WHAT THE WORDS OF A CONTRACT MEANT TO THE PARTIES, YOU SHOULD CONSIDER THE WHOLE CONTRACT, NOT JUST ISOLATED PARTS. YOU SHOULD USE EACH PART TO HELP YOU INTERPRET THE OTHERS, SO THAT ALL THE PARTS MAKE SENSE WHEN TAKEN TOGETHER.

**JURY INSTRUCTION NO. 45**

**INTERPRETATION -- CONSTRUCTION BY CONDUCT**


IN DECIDING WHAT THE WORDS IN A CONTRACT MEANT TO THE PARTIES, YOU MAY CONSIDER HOW THE PARTIES ACTED AFTER THE CONTRACT WAS CREATED BUT BEFORE ANY DISAGREEMENT BETWEEN THE PARTIES AROSE.

**JURY INSTRUCTION NO. 46**

**INTERPRETATION -- CONSTRUCTION AGAINST DRAFTER.**

IN DETERMINING THE MEANING OF A TERM OF THE CONTRACT, YOU MUST FIRST CONSIDER ALL OF THE OTHER INSTRUCTIONS THAT I HAVE GIVEN YOU. IF, AFTER CONSIDERING THESE INSTRUCTIONS, YOU STILL CANNOT AGREE ON THE MEANING OF THE TERM, THEN YOU SHOULD INTERPRET THE CONTRACT TERM AGAINST THE PARTY THAT DRAFTED THE TERM OR THE PARTY THAT CAUSED THE UNCERTAINTY, WHICHEVER THE CASE MAY BE.

**JURY INSTRUCTION NO. 47**

**INTERPRETATION -- REASONABLE TIME**

      IF A CONTRACT DOES NOT STATE A SPECIFIC TIME IN WHICH THE PARTIES ARE TO MEET THE REQUIREMENTS OF THE CONTRACT, THEN THE PARTIES MUST MEET THEM WITHIN A REASONABLE TIME. WHAT IS A REASONABLE TIME DEPENDS ON THE FACTS OF EACH CASE, INCLUDING THE SUBJECT MATTER OF THE CONTRACT, THE REASONS EACH PARTY ENTERED INTO THE CONTRACT, AND THE INTENTIONS OF THE PARTIES AT THE TIME THEY ENTERED THE CONTRACT.

**JURY INSTRUCTION NO. 48**

**WHEN TIME IS OF THE ESSENCE**


THE GENERAL RULE IS THAT TIME IS NOT OF THE ESSENCE WITH RESPECT TO PERFORMANCE UNDER AN AGREEMENT UNLESS THE PARTIES HAVE EXPRESSLY AGREED OTHERWISE.  ANY SUCH AGREEMENT MUST BE SHOWN IN CLEAR, UNEQUIVOCAL AND UNMISTAKABLE LANGUAGE.  IT IS NOT ENOUGH THAT A TIME IS MENTIONED DURING WHICH OR BEFORE WHICH SOMETHING SHALL BE DONE.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 49**

**DELAY IN PERFORMANCE**

IF YOU FIND THAT TIME IS OF THE ESSENCE AS TO ANY OBLIGATION UNDER A CONTRACT, ANY DELAY IN PERFORMANCE OF THAT OBLIGATION, WHETHER REASONABLE OR NOT, IS A BREACH OF THAT OBLIGATION.  IF YOU FIND THAT TIME IS NOT OF THE ESSENCE FOR THAT OBLIGATION, DELAY IN ITS PERFORMANCE, IF REASONABLE, DOES NOT CONSTITUTE A BREACH OF THAT OBLIGATION.

**United States District Court**

For the Northern District of California

**JURY INSTRUCTION NO. 50**

**DELAY IN PERFORMANCE EXCUSED**


ANY DELAY BY TK POWER IN PERFORMANCE IS EXCUSED TO THE EXTENT ACTS OF TEXTRON/E-Z-GO CAUSED ANY SUCH DELAY.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 51**

**ANTICIPATORY BREACH**


A PARTY CAN BREACH, OR BREAK, A CONTRACT BEFORE PERFORMANCE IS REQUIRED BY CLEARLY AND POSITIVELY INDICATING, BY WORDS OR CONDUCT, THAT HE OR SHE WILL NOT MEET THE REQUIREMENTS OF THE CONTRACT.


AN UNJUSTIFIED OR UNEXCUSED REPUDIATION OF OR FAILURE TO PERFORM A CONTRACT AT THE TIME OF PERFORMANCE IS DUE IS AN ACTUAL BREACH.  A REPUDIATION WHICH OCCURS BEFORE THE TIME WHEN PERFORMANCE IS DUE IS A BREACH BY ANTICIPATORY REPUDIATION, SOMETIMES REFERRED TO AS AN ANTICIPATORY BREACH.  WHEN AN ANTICIPATORY BREACH OCCURS, THE INJURED PARTY MAY WITHOUT COMPLETING ITS PERFORMANCE EITHER SUE IMMEDIATELY, OR WAIT UNTIL THE TIME FOR PERFORMANCE, AND THEN EXERCISE ITS RIGHTS FOR ACTUAL BREACH OF CONTRACT.


AN ANTICIPATORY REPUDIATION OR BREACH MAY BE EXPRESS OR IMPLIED. A PARTY WHICH EXPRESSLY REPUDIATES THE CONTRACT BY AN UNEQUIVOCAL REFUSAL TO PERFORM, COMMITS AN EXPRESS ANTICIPATORY BREACH OR REPUDIATION.  A PARTY WHICH PUTS IT OUT OF ITS POWER TO PERFORM THE PROMISE, COMMITS AN IMPLIED ANTICIPATORY BREACH OR REPUDIATION.  IN ORDER TO ESTABLISH A BREACH OF CONTRACT DUE TO AN ANTICIPATORY BREACH OR REPUDIATION, THE PARTY CLAIMING SUCH BREACH MUST PROVE IT HAD THE ABILITY TO PERFORM.


IF TK POWER PROVES THAT IT WOULD HAVE BEEN ABLE TO FULFILL THE TERMS OF THE CONTRACT AND THAT TEXTRON/E-Z-GO CLEARLY AND POSITIVELY

INDICATED, BY WORDS OR CONDUCT, THAT IT WOULD NOT MEET THE CONTRACT

REQUIREMENTS, THEN TEXTRON/E-Z-GO BREACHED THE CONTRACT.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 52**

**WAIVER OF CONTRACTUAL RIGHTS**


TK POWER CLAIMS THAT TEXTRON/E-Z-GO WAIVED CERTAIN CONTRACTUAL RIGHTS, WHICH EXCUSED OR MODIFIED TK POWER'S OBLIGATIONS.  TIMELINESS PROVISIONS ARE SUBJECT TO WAIVER BY THE PARTY FOR WHOSE BENEFIT THEY ARE MADE.  WAIVER IS THE INTENTIONAL RELINQUISHMENT OF A KNOWN RIGHT AFTER KNOWLEDGE OF THE FACTS.  THE WAIVER MAY BE AN EXPRESS STATEMENT, OR IT MAY BE IMPLIED, AS WHERE THE PARTY ENTITLED TO CERTAIN PERFORMANCE ACCEPTS PARTIAL OR DEFECTIVE PERFORMANCE.  TO PROVE THAT TEXTRON/E-Z-GO WAIVED ANY RIGHTS UNDER THE AGREEMENT, TK POWER MUST PROVE THAT TEXTRON/E-Z-GO KNOWINGLY AND INTENTIONALLY RELINQUISHED A KNOWN CONTRACTUAL RIGHT.  AS THE PARTY CLAIMING A WAIVER, THE BURDEN IS ON TK POWER TO PROVE IT BY CLEAR AND CONVINCING EVIDENCE THAT DOES NOT LEAVE THE MATTER TO SPECULATION.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 53**

**INTRODUCTION TO CONTRACT DAMAGES**

IF YOU DECIDE THAT TK POWER HAS PROVED ITS CLAIM AGAINST TEXTRON/E-Z-GO FOR BREACH OF CONTRACT, YOU ALSO MUST DECIDE HOW MUCH MONEY WILL REASONABLY COMPENSATE TK POWER FOR THE HARM CAUSED BY THE BREACH. THIS COMPENSATION IS CALLED "DAMAGES." THE PURPOSE OF SUCH DAMAGES IS TO PUT THE NON-BREACHING PARTY IN AS GOOD A POSITION AS IT WOULD HAVE BEEN HAD THE OTHER PERFORMED AS PROMISED.

TO RECOVER DAMAGES FOR ANY HARM, THE PARTY MUST PROVE:

1.      THAT THE HARM WAS LIKELY TO ARISE IN THE ORDINARY COURSE OF EVENTS FROM THE BREACH OF THE CONTRACT; OR

2.      THAT WHEN THE CONTRACT WAS MADE, BOTH PARTIES COULD HAVE REASONABLY FORESEEN THE HARM AS THE PROBABLE RESULT OF THE BREACH.

TK POWER ALSO MUST PROVE THE AMOUNT OF ITS DAMAGES ACCORDING TO THE FOLLOWING INSTRUCTIONS. IT DOES NOT HAVE TO PROVE THE EXACT AMOUNT OF DAMAGES. YOU MUST NOT SPECULATE OR GUESS IN AWARDING DAMAGES.

**JURY INSTRUCTION NO. 54**

**LOSS OF PROFITS -- NO PROFITS EARNED**


TO RECOVER DAMAGES FOR LOST PROFITS, TK POWER MUST PROVE THAT IT IS REASONABLY CERTAIN IT WOULD HAVE EARNED PROFITS BUT FOR TEXTRON/E-Z-GO'S BREACH OF THE CONTRACT.


TO DECIDE THE AMOUNT OF DAMAGES FOR LOST PROFITS, YOU MUST DETERMINE THE GROSS, OR TOTAL, AMOUNT TK POWER WOULD HAVE RECEIVED IF THE CONTRACT HAD BEEN PERFORMED AND THEN SUBTRACT FROM THAT AMOUNT THE COSTS INCLUDING THE VALUE OF THE LABOR/MATERIALS/RENTS/EXPENSES/INTEREST ON LOANS INVESTED IN THE BUSINESS TK POWER WOULD HAVE HAD IF THE CONTRACT HAD BEEN PERFORMED.


YOU DO NOT HAVE TO CALCULATE THE AMOUNT OF THE LOST PROFITS WITH MATHEMATICAL PRECISION, BUT THERE MUST BE A REASONABLE BASIS FOR COMPUTING THE LOSS.

**JURY INSTRUCTION NO. 55**

**OBLIGATION TO PAY MONEY ONLY**

TO RECOVER DAMAGES FOR THE BREACH OF A CONTRACT TO PAY MONEY, TK POWER MUST PROVE THE AMOUNT DUE UNDER THE CONTRACT.

**JURY INSTRUCTION NO. 56**

**PRESENT CASH VALUE OF FUTURE DAMAGES**

TO RECOVER FOR FUTURE HARM, TK POWER MUST PROVE THAT SUCH HARM IS REASONABLY CERTAIN TO OCCUR AND MUST PROVE THE AMOUNT OF THOSE FUTURE DAMAGES. THE AMOUNT OF DAMAGES FOR FUTURE HARM MUST BE REDUCED TO PRESENT CASH VALUE. THIS IS NECESSARY BECAUSE MONEY RECEIVED NOW WILL, THROUGH INVESTMENT, GROW TO A LARGER AMOUNT IN THE FUTURE.

TO FIND PRESENT CASH VALUE, YOU MUST DETERMINE THE AMOUNT OF MONEY WHICH, IF REASONABLY INVESTED TODAY, WILL PROVIDE TK POWER WITH THE AMOUNT OF ITS FUTURE DAMAGES.

YOU MAY CONSIDER EXPERT TESTIMONY IN DETERMINING THE PRESENT CASH VALUE OF FUTURE DAMAGES.

1  **JURY INSTRUCTION NO. 57**

2  **MITIGATION OF DAMAGES**

3

4     IF TEXTRON/E-Z-GO BREACHED THE CONTRACT AND THE BREACH CAUSED

5  HARM, TK POWER IS NOT ENTITLED TO RECOVER DAMAGES FOR HARM THAT

6  TEXTRON/E-Z-GO PROVES TK POWER COULD HAVE AVOIDED WITH REASONABLE

7  EFFORTS OR EXPENDITURES.  YOU SHOULD CONSIDER THE REASONABLENESS OF

8  TK POWER'S EFFORTS IN LIGHT OF THE CIRCUMSTANCES FACING IT AT THE TIME,

9  INCLUDING ITS ABILITY TO MAKE THE EFFORTS OR EXPENDITURES WITHOUT

10  UNDUE RISK OR HARDSHIP.

11

12     IF TK POWER MADE REASONABLE EFFORTS TO AVOID HARM, THEN YOUR

13  AWARD SHOULD INCLUDE REASONABLE AMOUNTS THAT IT SPENT FOR THIS

14  PURPOSE.

United States District Court
For the Northern District of California

**JURY INSTRUCTION NO. 58**

**PLAINTIFF MAY NOT RECOVER DUPLICATE CONTRACT AND TORT DAMAGES**

TK POWER HAS MADE CLAIMS AGAINST TEXTRON/E-Z-GO FOR BREACH OF CONTRACT, ON THE ONE HAND, AND INTENTIONAL MISREPRESENTATION, FALSE PROMISES, AND NEGLIGENT MISREPRESENTATION (COLLECTIVELY, "THE FRAUD CLAIMS"), ON THE OTHER HAND. IF YOU DECIDE THAT TK POWER HAS PROVED BOTH ITS CLAIM FOR BREACH OF CONTRACT AND ONE OR MORE OF ITS FRAUD CLAIMS, THE SAME DAMAGES THAT RESULTED FROM BOTH CLAIMS CAN BE AWARDED ONLY ONCE.

**JURY INSTRUCTION NO. 59**

**INTENTIONAL MISREPRESENTATION**

TK POWER CLAIMS THAT TEXTRON/E-Z-GO MADE A FALSE REPRESENTATION THAT HARMED IT. TO ESTABLISH THIS CLAIM, TK POWER MUST PROVE ALL OF THE FOLLOWING:

1.      THAT TEXTRON/E-Z-GO REPRESENTED TO TK POWER THAT AN IMPORTANT FACT WAS TRUE;

2.      THAT TEXTRON/E-Z-GO'S REPRESENTATION WAS FALSE;

3.      THAT TEXTRON/E-Z-GO KNEW THAT THE REPRESENTATION WAS FALSE WHEN IT MADE IT, OR THAT IT MADE THE REPRESENTATION RECKLESSLY AND WITHOUT REGARD FOR ITS TRUTH;

4.      THAT TEXTRON/E-Z-GO INTENDED THAT TK POWER RELY ON THE REPRESENTATION;

5.      THAT TK POWER REASONABLY RELIED ON TEXTRON/E-Z-GO'S REPRESENTATION;

6.      THAT TK POWER WAS HARMED; AND

7.      THAT TK POWER'S RELIANCE ON TEXTRON/E-Z-GO'S REPRESENTATION WAS A SUBSTANTIAL FACTOR IN CAUSING ITS HARM.

**JURY INSTRUCTION NO. 60**

**FALSE PROMISE**

TK POWER CLAIMS IT WAS HARMED BECAUSE TEXTRON/E-Z-GO MADE A FALSE PROMISE. TO ESTABLISH THIS CLAIM, TK POWER MUST PROVE ALL OF THE FOLLOWING:

1.   THAT TEXTRON/E-Z-GO MADE A PROMISE TO TK POWER;

2.   THAT THIS PROMISE WAS IMPORTANT TO THE TRANSACTION;

3.   THAT TEXTRON/E-Z-GO DID NOT INTEND TO PERFORM THIS PROMISE WHEN IT MADE IT;

4.   THAT TEXTRON/E-Z-GO INTENDED THAT TK POWER RELY ON THIS PROMISE;

5.   THAT TK POWER REASONABLY RELIED ON TEXTRON/E-Z-GO'S PROMISE;

6.   THAT TEXTRON/E-Z-GO DID NOT PERFORM THE PROMISED ACT;

7.   THAT TK POWER WAS HARMED; AND

8.   THAT TK POWER'S RELIANCE ON TEXTRON/E-Z-GO'S PROMISE WAS A SUBSTANTIAL FACTOR IN CAUSING ITS HARM.

**JURY INSTRUCTION NO. 61**

**NEGLIGENT MISREPRESENTATION**

TK POWER CLAIMS IT WAS HARMED BECAUSE TEXTRON/E-Z-GO NEGLIGENTLY MISREPRESENTED AN IMPORTANT FACT. TO ESTABLISH THIS CLAIM, TK POWER MUST PROVE ALL OF THE FOLLOWING:

1. THAT TEXTRON/E-Z-GO REPRESENTED TO TK POWER THAT AN IMPORTANT FACT WAS TRUE;

2. THAT TEXTRON/E-Z-GO'S REPRESENTATION WAS NOT TRUE;

3. THAT TEXTRON/E-Z-GO HAD NO REASONABLE GROUNDS FOR BELIEVING THE REPRESENTATION WAS TRUE WHEN IT MADE IT;

4. THAT TEXTRON/E-Z-GO INTENDED THAT TK POWER RELY ON THIS REPRESENTATION;

5. THAT TK POWER REASONABLY RELIED ON TEXTRON/E-Z-GO'S REPRESENTATION;

6. THAT TK POWER WAS HARMED; AND

7. THAT TK POWER'S RELIANCE ON TEXTRON/E-Z-GO'S REPRESENTATION WAS A SUBSTANTIAL FACTOR IN CAUSING ITS HARM.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 62**

**RELIANCE**

TK POWER RELIED ON TEXTRON/E-Z-GO'S MISREPRESENTATION IF IT CAUSED IT TO ENTER INTO AN AGREEMENT, AND IF IT WOULD PROBABLY NOT HAVE DONE SO WITHOUT SUCH MISREPRESENTATION.

IT IS NOT NECESSARY FOR A MISREPRESENTATION TO BE THE ONLY REASON FOR TK POWER'S CONDUCT. IT IS ENOUGH IF A MISREPRESENTATION SUBSTANTIALLY INFLUENCED TK POWER'S CHOICE, EVEN IF IT WAS NOT THE ONLY REASON FOR ITS CONDUCT.

**JURY INSTRUCTION NO. 63**

**INTRODUCTION TO TORT DAMAGES -- LIABILITY CONTESTED**

IF YOU DECIDE THAT TK POWER HAS PROVED ANY ONE OF ITS CLAIMS FOR INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION, OR FALSE PROMISE AGAINST TEXTRON/E-Z-GO, YOU ALSO MUST DECIDE HOW MUCH MONEY WILL REASONABLY COMPENSATE TK POWER FOR THE HARM. THIS COMPENSATION IS CALLED "DAMAGES."

THE AMOUNT OF DAMAGES MUST INCLUDE AN AWARD FOR EACH ITEM OF HARM THAT WAS CAUSED BY TEXTRON/E-Z-GO'S WRONGFUL CONDUCT, EVEN IF THE PARTICULAR HARM COULD NOT HAVE BEEN ANTICIPATED.

TK POWER DOES NOT HAVE TO PROVE THE EXACT AMOUNT OF DAMAGES THAT WILL PROVIDE REASONABLE COMPENSATION FOR THE HARM. HOWEVER, YOU MUST NOT SPECULATE OR GUESS IN AWARDING DAMAGES.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 64**

**DAMAGES -- "OUT OF POCKET" RULE**

IF YOU DECIDE THAT TK POWER HAS PROVED ITS CLAIM AGAINST TEXTRON/E-Z-GO, YOU ALSO MUST DECIDE HOW MUCH MONEY WILL REASONABLY COMPENSATE TK POWER FOR THE HARM. THIS COMPENSATION IS CALLED "DAMAGES."

THE AMOUNT OF DAMAGES MUST INCLUDE AN AWARD FOR ALL HARM THAT TEXTRON/E-Z-GO WAS A SUBSTANTIAL FACTOR IN CAUSING, EVEN IF THE PARTICULAR HARM COULD NOT HAVE BEEN ANTICIPATED.

TK POWER MUST PROVE THE AMOUNT OF ITS DAMAGES. HOWEVER, TK POWER DOES NOT HAVE TO PROVE THE EXACT AMOUNT OF DAMAGES THAT WILL PROVIDE REASONABLE COMPENSATION FOR THE HARM. YOU MUST NOT SPECULATE OR GUESS IN AWARDING DAMAGES.

TK POWER MAY RECOVER AMOUNTS THAT IT REASONABLY SPENT IN RELIANCE ON TEXTRON/E-Z-GO'S FALSE REPRESENTATION OR FALSE PROMISE IF THOSE AMOUNTS WOULD NOT OTHERWISE HAVE BEEN SPENT.  TK POWER AGREES THAT IT RECEIVED PAYMENT OF $33,750 FROM TEXTRON/E-Z-GO, WHICH AMOUNT, ALONG WITH ANY OTHER VALUE RECEIVED FROM TEXTRON/E-Z-GO, MUST BE DEDUCTED FROM ANY TK POWER CLAIM FOR "OUT OF POCKET" DAMAGES.

United States District Court

For the Northern District of California

**JURY INSTRUCTION NO. 65**

**ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES**

THE ARGUMENTS OF THE ATTORNEYS ARE NOT EVIDENCE OF DAMAGES. YOUR AWARD MUST BE BASED ON YOUR REASONED JUDGMENT APPLIED TO THE TESTIMONY OF THE WITNESSES AND THE OTHER EVIDENCE THAT HAS BEEN ADMITTED DURING TRIAL.

**United States District Court**
For the Northern District of California

**JURY INSTRUCTION NO. 66**

**PUNITIVE DAMAGES -- ENTITY DEFENDANT -- BIFURCATED TRIAL (FIRST PHASE)**

IF YOU DECIDE THAT TEXTRON/E-Z-GO COMMITTED A TORT AGAINST TK POWER, YOU MUST DECIDE WHETHER THAT CONDUCT JUSTIFIES AN AWARD OF PUNITIVE DAMAGES. THE AMOUNT, IF ANY, OF PUNITIVE DAMAGES WILL BE AN ISSUE DECIDED LATER.

AT THIS TIME, YOU MUST DECIDE WHETHER TK POWER HAS PROVED THAT TEXTRON/E-Z-GO ENGAGED IN THAT CONDUCT WITH MALICE, OPPRESSION, OR FRAUD. TO DO THIS, TK POWER MUST PROVE ONE OF THE FOLLOWING BY CLEAR AND CONVINCING EVIDENCE:

1.  THAT THE CONDUCT CONSTITUTING MALICE, OPPRESSION, OR FRAUD WAS COMMITTED BY ONE OR MORE OFFICERS, DIRECTORS, OR MANAGING AGENTS OF TEXTRON/E-Z-GO WHO ACTED ON BEHALF OF TEXTRON/E-Z-GO; OR

2.  THAT THE CONDUCT CONSTITUTING MALICE, OPPRESSION, OR FRAUD WAS AUTHORIZED BY ONE OR MORE OFFICERS, DIRECTORS, OR MANAGING AGENTS OF TEXTRON/E-Z-GO; OR

3.  THAT ONE OR MORE OFFICERS, DIRECTORS, OR MANAGING AGENTS OF TEXTRON/E-Z-GO KNEW OF THE CONDUCT CONSTITUTING MALICE, OPPRESSION, OR FRAUD AND ADOPTED OR APPROVED THAT CONDUCT AFTER IT OCCURRED.

"MALICE" MEANS THAT TEXTRON/E-Z-GO ACTED WITH INTENT TO CAUSE INJURY OR THAT TEXTRON/E-Z-GO'S CONDUCT WAS DESPICABLE AND WAS DONE WITH A WILLFUL AND KNOWING DISREGARD OF THE RIGHTS OR SAFETY OF ANOTHER. A PERSON ACTS WITH KNOWING DISREGARD WHEN HE OR SHE IS AWARE

1   OF THE PROBABLE DANGEROUS CONSEQUENCES OF HIS OR HER CONDUCT AND

2   DELIBERATELY FAILS TO AVOID THOSE CONSEQUENCES.

3

4   "OPPRESSION" MEANS THAT TEXTRON/E-Z-GO'S CONDUCT WAS DESPICABLE

5   AND SUBJECTED TK POWER TO CRUEL AND UNJUST HARDSHIP IN KNOWING

6   DISREGARD OF ITS RIGHTS.

7

8   "DESPICABLE CONDUCT" IS CONDUCT THAT IS SO VILE, BASE, OR

9   CONTEMPTIBLE THAT IT WOULD BE LOOKED DOWN ON AND DESPISED BY

10  REASONABLE PEOPLE.

11

12  "FRAUD" MEANS THAT TEXTRON/E-Z-GO INTENTIONALLY MISREPRESENTED

13  OR CONCEALED A MATERIAL FACT AND DID SO INTENDING TO HARM TK POWER.

14

15  AN EMPLOYEE IS A "MANAGING AGENT" IF HE OR SHE EXERCISES

16  SUBSTANTIAL INDEPENDENT AUTHORITY AND JUDGMENT IN HIS OR HER

17  CORPORATE DECISION MAKING SO THAT HIS OR HER DECISIONS ULTIMATELY

18  DETERMINE CORPORATE POLICY.

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

**JURY INSTRUCTION NO. 67**

**DETERMINING PUNITIVE DAMAGES**

THERE IS NO FIXED STANDARD FOR DETERMINING THE AMOUNT OF PUNITIVE DAMAGES, AND YOU ARE NOT REQUIRED TO AWARD ANY PUNITIVE DAMAGES. IF YOU DECIDE TO AWARD PUNITIVE DAMAGES, YOU SHOULD CONSIDER ALL OF THE FOLLOWING IN DETERMINING THE AMOUNT:

(A)   HOW REPREHENSIBLE WAS TEXTRON/E-Z-GO'S CONDUCT?

(B)   IS THERE A REASONABLE RELATIONSHIP BETWEEN THE AMOUNT OF PUNITIVE DAMAGES AND TK POWER'S HARM?

(C)   IN VIEW OF TEXTRON/E-Z-GO'S FINANCIAL CONDITION, WHAT AMOUNT IS NECESSARY TO PUNISH IT AND DISCOURAGE FUTURE WRONGFUL CONDUCT? YOU MAY NOT INCREASE THE PUNITIVE AWARD ABOVE AN AMOUNT THAT IS OTHERWISE APPROPRIATE MERELY BECAUSE TEXTRON/E-Z-GO HAS SUBSTANTIAL FINANCIAL RESOURCES. ANY AWARD YOU IMPOSE MAY NOT EXCEED TEXTRON/E-Z-GO'S ABILITY TO PAY.

**JURY INSTRUCTION NO. 68**

**DEADLOCKED JURY**

MEMBERS OF THE JURY, YOU HAVE ADVISED THAT YOU HAVE BEEN UNABLE TO AGREE UPON A VERDICT IN THIS CASE. I HAVE DECIDED TO SUGGEST A FEW THOUGHTS TO YOU.

AS JURORS, YOU HAVE A DUTY TO DISCUSS THE CASE WITH ONE ANOTHER AND TO DELIBERATE IN AN EFFORT TO REACH A UNANIMOUS VERDICT IF EACH OF YOU CAN DO SO WITHOUT VIOLATING YOUR INDIVIDUAL JUDGMENT AND CONSCIENCE. EACH OF YOU MUST DECIDE THE CASE FOR YOURSELF, BUT ONLY AFTER YOU CONSIDER THE EVIDENCE IMPARTIALLY WITH YOUR FELLOW JURORS. DURING YOUR DELIBERATIONS, YOU SHOULD NOT HESITATE TO REEXAMINE YOUR OWN VIEWS AND CHANGE YOUR OPINION IF YOU BECOME PERSUADED THAT IT IS WRONG. HOWEVER, YOU SHOULD NOT CHANGE AN HONEST BELIEF AS TO THE WEIGHT OR EFFECT OF THE EVIDENCE SOLELY BECAUSE OF THE OPINIONS OF YOUR FELLOW JURORS OR FOR THE MERE PURPOSE OF RETURNING A VERDICT.

ALL OF YOU ARE EQUALLY HONEST AND CONSCIENTIOUS JURORS WHO HAVE HEARD THE SAME EVIDENCE. ALL OF YOU SHARE AN EQUAL DESIRE TO ARRIVE AT A VERDICT. EACH OF YOU SHOULD ASK YOURSELF WHETHER YOU SHOULD QUESTION THE CORRECTNESS OF YOUR PRESENT POSITION.

I REMIND YOU THAT IN YOUR DELIBERATIONS YOU ARE TO CONSIDER THE INSTRUCTIONS I HAVE GIVEN YOU AS A WHOLE. YOU SHOULD NOT SINGLE OUT ANY PART OF ANY INSTRUCTION, INCLUDING THIS ONE, AND IGNORE OTHERS. THEY ARE ALL EQUALLY IMPORTANT.

YOU MAY NOW RETIRE AND CONTINUE YOUR DELIBERATIONS.